JULIUS LISKE, Appellant, v. LEM STEVENSON, Respondent.

Kansas City Court of Appeals, May 14, 1894.

1. Slander: PRIVILEGED COMMUNICATIONS: PEACE OFFICER. Communications addressed to a person who is a justice of the peace, but not for the purpose of consideration of the justice as an officer of the law and without the view of seeking the aid of the law or the assistance or advice of its officers, are not privileged and if slanderous in their character, the utterance is slander.

2. ———: PLEADING: EVIDENCE OF OTHER PUBLICATION: ELECTION. Though there is evidence of several publications of the alleged slander, the question of requiring the plaintiff to elect on which he will stand, is not passed upon in this case since, if plaintiff wishes to rely on the several publications, he can amend his petition with that view.

*Appeal from the Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

REVERSED AND REMANDED.

STATEMENT BY ELLISON, J.

This is a slander suit in which the plaintiff took a nonsuit for the reason that the court sustained a demurrer to his evidence. The petition charged that

the defendant spoke concerning the plaintiff the words, "I believe Liske stole my meat," intending and being understood thereby to accuse the plaintiff of grand larceny. The plaintiff, to make his case in chief, offered the evidence of only two witnesses—himself and one J. T. Anthony, a justice of the peace. His own testimony was that he and the defendant lived some two miles apart, in the country, south of Kansas City; that one morning in last January the defendant, Stevenson, came to his house in company with two or three other men, one of whom was carrying a gun, and said to plaintiff (in the language of the latter) "that he had his meat stolen last night and had come along to search the house and wanted to find his meat. He said he believed I stole his meat," and further that he was searching houses along the road. Plaintiff refused to allow defendant to enter his house, but did allow the men who came with him, one of whom was the witness Anthony, to make the search as desired. The search having proved unavailing, defendant suggested that plaintiff's foot be measured to see if it corresponded with tracks supposed to be made by the thief, and it was measured by some of the party without resistance from plaintiff. The measurement of the foot was found not to agree with the tracks, and the searching party went away, but just before they went defendant said to plaintiff—in the words of the latter's testimony —"that he wasn't a bit afraid to tell me I stole his meat."

The other witness, J. T. Anthony, also testified to the matters covered by the plaintiff's evidence without important contradiction and in addition to the following facts. He was a farmer who had been recently commissioned justice of the peace and lived very near plaintiff's house and on the road between defendant and plaintiff. Had known defendant six or seven

years.   Defendant stopped at witness' house on his way
to plaintiff's on the morning after the meat was stolen.
Witness was in the field shocking corn.   After some
preliminary inquiries defendant said to him—quoting
the witness' words—"I believe he · (Liske) stole my
meat last night; I would like for you to watch him."
Anthony declined to watch him, but offered to issue a
search warrant or warrant for arrest.   Defendant made
no response to the offer of judicial aid, but persuaded
Anthony to join him in looking through the fodder
shocks in the field to see if the meat was hidden there.
After this search they were joined by defendant's com-
panion, who said something about a search warrant,
but defendant didn't want it.   Defendant asked witness
about his liability if he got a warrant for plaintiff's
arrest, but didn't ask for any warrant.   He then
persuaded witness to get his shotgun and go with him
over to plaintiff's house; witness protested but went
and was present at the searching of the house and the
measuring of the foot.   Defendant also told witness
that $75 worth of meat was stolen from him.   Defend-
ant at no time asked witness for a warrant or other
judicial process, and did not suggest that he wanted
anything of the kind.   He consulted with witness
about the theft as a neighbor and not as a justice of
the peace.   This was witness' impression and belief
from all that defendant said or did.   The only time
defendant referred to witness' judicial character was
when witness advised him to get out a search warrant,
but defendant did not follow his advice.

After offering this evidence in substance, plaintiff
rested, and defendant demurred to the evidence.   As
will be seen, there was evidence tending to prove three
separate speakings of the slanderous words charged,
and the court required the plaintiff to elect upon which
of these three speakings he would rely to establish the

allegation in the petition, so that the others might be excluded from the consideration of the jury, except as evidence in aggravation of damages caused by the speaking so elected. Under protest and objection plaintiff elected the speaking testified to exclusively by witness Anthony. Thereupon the court sustained the demurrer to evidence and plaintiff took a nonsuit, and after a motion to set it aside, appealed.

*T. A. Frank Jones* for plaintiff.

(1) The trial court had no right to require the plaintiff in the course of the trial to elect some one of the various speakings of the slanderous words charged in the petition, and which the evidence tended to prove as the particular one upon which he would go to the jury and to abandon the others. (2) It was error for the trial court to rule that the slanderous words spoken by the defendant to the witness Anthony were absolutely privileged because he was a justice of the peace and therefore exclude them from the consideration of the jury. Whether such words were spoken to the justice of the peace in his judicial capacity or in *bona fide* contemplation of judicial proceedings was a question of fact which should have been submitted to the jury under proper instructions. Odger's Libel and Slander, 185; *Burlingame v. Burlingame*, 8 Cowen, 141; *Allen v. Crofoot*, 2 Wend. 515; *Morgan v. Booth*, 13 Bush. 480; *White v. Carroll*, 42 N. Y. 161; *Briggs v. Bird*, 2 Ired. 377; *Bunton v. Worley*, 4 Bibb. 38; *Hartsack v. Reddick*, 6 Blackf. 255; *King v. Townsend*, 2 Law Rep. 126. (3) The court erred in directing a verdict in favor of the defendant upon the plaintiff's evidence, *first*, because the plaintiff had made out a good *prima facie* case; *second*, because it is against the spirit of the constitutional requirement to take a slander

case from the jury. Constitution of Missouri, art. 2, sec. 14; *State v. Armstrong*, 106 Mo. 395.

*Peak & Ball* for respondent.

Nor do we mean to say that if the occasion of the slanderous speaking had been otherwise specified or identified, it would be at all necessary to prove the presence of every individual alleged to have been present; but we do mean to say and most earnestly contend that when, as here, the only identity, the only description given the occasion of the slanderous speaking by the pleading is the presence of two parties named, proof which fails to show this sole mark of identity fails to sustain the averments of the petition. 1 Greenleaf, Ev., sec. 5611. (2) We do not understand it to be seriously questioned that the words were privileged if spoken to a peace officer, and while engaged in the investigation of a crime. Townsend on Slander, 380, sec. 220; *Grimes v. Coyle*, 6 B. M. 301; *Perkins v. Mitchell*, 31 Barb. 471.

Ellison, J.—From the evidence, the substance of which we have stated, we are of the opinion that the court erred in ruling that the speaking of the slanderous words charged was privileged on the ground of having been spoken to a justice of the peace, an officer authorized to issue warrants for arrest for felony and search warrants. The testimony so far as it was permitted to be heard, showed without question that defendant, at time of speaking the words, was not consulting with the justice of the peace as an officer of the law, but was merely conversing with him as with any other individual. He refused the assistance or interposition of legal process and his conduct showed so far as it has been developed that he did not desire the aid of the law or the assistance or advice of the law's officers.

It is not necessary to pass upon the ruling requiring plaintiff to elect since if defendant's words were spoken at the different times referred to in evidence, or, if the same words were spoken under different circumstances and plaintiff wishes to rely upon such condition of his case it can be properly made by amendment of the petition.

The judgment is reversed and the cause remanded. All concur.