JOHN TRAYNOR v. F. G. SIELAFF.[1]

Nov. 15, 1895.

Nos. 9355—(30).

**Libel—Imputing Insolvency and Dishonesty.**

The complaint in this action alleged that the defendant maliciously and falsely caused to be published in a circular issued and distributed by the Retail Merchants' Protective Association, of which he was a member, under the heading of "Special Reference List of Unsettled Claims," these words "Traguor, John, scmn.. Belle Plaine, mdse. $4.00," and alleged extrinsic facts showing their application to the plaintiff, their meaning, and that the defendant intended to and did thereby impute to the plaintiff insolvency and dishonesty in business, and that the list was so understood by its readers. *Held*, that the complaint stated a cause of action.

**Same—Privilege.**

To entitle a party to claim that an alleged libelous publication is privileged it must appear that it was made in the discharge of a public or private duty, or for the protection of his private interests, and that it was relevant and proper in that connection, and based upon a reasonable and probable necessity in the premises.

**Same.**

*Held*, that the publication in this case was not privileged, and that the trial court correctly refused to give certain requests based upon the assumption that the publication was privileged.

**Verdict Sustained.**

*Held*, that the verdict is sustained by the evidence.

[1] Reported in 64 N. W. 915.

Appeal by defendant from an order of the district court for Scott county, Cadwell, J., denying a motion for a new trial.   Affirmed.

The amendment to the complaint allowed by the court and referred to in the paragraph of the opinion numbered (1) was in substance an allegation that the name "Traguor, John," in the list was intended for plaintiff and was so understood by all the members of the association who received and read the list and by other readers thereof. The four questions asked defendant and referred to in the paragraph of the opinion numbered (2) were as follows:   (1) When you received your list from this association after sending that name in and seeing that name on the last line of page 6, did you understand it to refer to John Traynor, and refer to the name you sent in?   (2) Didn't you then go and get your list and show Mr. Traynor his name upon that list, point it out upon that list?   Now, under the terms of this association, after you received this list with the names of debtors in it, you were not to extend further credit, were you, to such names as appeared upon the list?   (3) Now I will go a little further. After a party's name was placed upon that list and he paid up, then you extended further credit to him again, didn't you?   (4) And as long as his name was on the list, none of the members of the association would credit him in any manner, would they, under the terms of the agreement?

*Merrick & Merrick*, for appellant.

The question whether the words were libelous upon their face or defamatory was for the court.   Newell v. How, 31 Minn. 235, 17 N. W. 383.   There was an absence of allegation of special damages, and an entire failure to prove either general or special damages. Townshend, Sland. & L. (4th Ed.) §§ 140, 148, 188; 2 Greenleaf, Ev. §§ 254, 256, 420; Newbold v. Braastreet, 57 Md. 38.   Not only must the special damages be alleged and proven as laid, but it must appear that the special damage proved is the natural and approximate consequence of the publication. 2 Greenleaf, Ev. 420; Townshend, Sland. & L. (4th Ed.) § 197, and notes; Newbold v. Bradstreet, supra; Newell v. How, 31 Minn. 235, 17 N. W. 383; Zier v. Hofflin, 33 Minn. 66, 21 N. W. 862; Lowry v. Vedder, 40 Minn. 475, 42 N. W. 542. The communication, or rather, publication, made to the association by the plaintiff, and by it to its members, is strictly privileged, and

therefore damages cannot be recovered except on proof of actual malice. Locke v. Bradstreet Co., 22 Fed. 771; Sunderlin v. Bradstreet Co., 46 N. Y. 188; Marks v. Baker, 28 Minn. 162, 9 N. W. 678. Under the pleadings and the evidence it was error to submit the question of punitive damages to the jury. Eviston v. Cramer, 57 Wis. 570, 15 N. W. 760; and Templeton v. Graves, 59 Wis. 95, 17 N. W. 672.

*F. C. Irwin*, for respondent.

The communication was not privileged. Muetze v. Tuteur, 77 Wis. 236, 46 N. W. 123; Johnson v. Bradstreet, 77 Ga. 172, 4 Am. St. Rep. 77; Townshend, Sland. & L. (4th Ed.) 417; Masters v. Lee, 39 Neb. 574, 58 N. W. 222.

START, C. J. This is an action for a libel. Verdict for plaintiff for $50, and from an order denying his motion for a new trial the defendant appeals.

The complaint, as amended, alleges that the defendant was during the times therein mentioned a merchant and a member of an association known as the Retail Merchants' Protective Association of Minneapolis, which issued a written circular, known as its "Black List" or "Dead-Beat List," the heading of which was substantially as follows: "The Retail Merchants' Protective Association of Minneapolis, Minnesota. Incorporated under the laws of the state of Minnesota. Special reference list of unsettled claims in and for Scott, Carver, and McLeod counties;" that the defendant maliciously and with the intent to injure the credit and good name of the plaintiff, and knowing the same to be false, caused to be inserted and published of the plaintiff in such list and circular, under such caption or heading, these words, "Traguor, John, scmn., Belle Plaine, mdse. $4.00"; that the spelling of the name of the plaintiff was a mistake in the printing of the list, but it was the defendant's intention to insert therein the plaintiff's name, and the name "Traguor, John," in such list, was intended for the plaintiff, and was so understood by all the members of the association who received and read the list, and by other readers thereof. The complaint further charges that the purpose of the defendant in so publishing the name of the plaintiff was to brand him as a person who did not pay his debts, and to pre-

vent him from obtaining credit, and to impute to him insolvency and dishonesty in his business dealings, and that the defendant then knew that the plaintiff was not indebted to him in any sum; that the list was circulated by the association and the defendant publicly among business men in the counties named, and in Belle Plaine, the plaintiff's residence.

The answer admits that the defendant is a merchant doing business at Belle Plaine, and a member of the association referred to in the complaint, but denies that it ever published any list or circular known as a "black" or "dead-beat" list, and puts in issue the other material allegations of the complaint. The answer admits that the defendant furnished to the association the information that John Traynor, residence Belle Plaine, was indebted to defendant in the sum of four dollars, and alleges that it was his duty as such member to do so, and that his act was privileged.

There are 19 assignments of error, but they may be grouped and disposed of under four general heads: (1) Those relating to the complaint, and the amendment thereof; (2) the exceptions to the rulings of the court as to the admissibility of evidence; (3) the exceptions to the charge and refusal to charge; (4) the sufficiency of the evidence to support the verdict.

1. The complaint, as amended, states a cause of action. While the words published of the plaintiff, standing alone, and unexplained, are not libelous on their face, yet they are reasonably susceptible of a defamatory meaning as well as an innocent one, according to the occasion, connection, and circumstances of using them. The complaint alleges such extrinsic matters showing their application to the plaintiff, the connection in which the words were used, their meaning, and how they were understood by the persons to whom the publication was sent. It was a question, then, for the jury whether the words were published of and concerning the plaintiff, and whether they were libelous. This question was properly submitted to the jury. Woodling v. Knickerbocker, 31 Minn. 268, 17 N. W. 387; Zier v. Hofflin, 33 Minn. 66, 21 N. W. 862. But the defendant claims that it was error to permit the plaintiff to amend his complaint, because the original did not state a cause of action. There is, however, no claim that the cause of action which the plaintiff evidently intended to allege was changed by the amendment, or that the defendant was.

in any manner prejudiced thereby. The court allowed the amendment with leave to the defendant to have the case continued if he so desired. This was a fair exercise of the court's discretion. Rau v. Minnesota Valley R. Co., 13 Minn. 407 (442).

2. The plaintiff called the defendant for cross-examination under the statute, and his attention was called to plaintiff's Exhibit A,—the circular or list referred to in the complaint,—and he was asked four questions, which were each objected to by the defendant, and an exception taken to the overruling of the objections. The questions were all proper, and the rulings correct, as they all related to the understanding of the defendant as to the character of the list, and whether it referred to the plaintiff, and as to the duty of members of the association in reference to giving credit to persons whose names were published in the list. These matters had a direct bearing on the questions of the defendant's knowledge and motive when he sent the plaintiff's name to the association. The plaintiff's Exhibit A was rightly received in evidence, for it tended, in connection with the oral evidence, to establish the allegations of the complaint. It was not a variance.

3. The question whether or not the court erred in refusing the special requests of the defendant for instructions to the jury, which were not substantially covered by the general charge, turns upon the further question whether the court was correct in charging the jury that the publication, if libelous, was not privileged. To entitle a party to claim that an alleged libelous publication is privileged, it must appear that it was made in the discharge of a public or private duty, or for the protection of his private interests, and that it was relevant and proper in that connection, and based upon a reasonable and probable necessity in the premises. Quinn v. Scott, 22 Minn. 456; Lowry v. Vedder, 40 Minn. 475, 42 N. W. 542. Tested by this rule, the claim of the defendant that the publication was privileged is clearly without merit, for the uncontradicted evidence shows that the publication was made by the defendant to serve his own private purpose of coercing the plaintiff to pay a disputed bill of four dollars by causing his name to be published in what is euphemistically designated as a "Special Reference List of Unsettled Claims"; but the real purpose of the list becomes apparent by a reference to the defendant's certificate of membership in the association, in which it

agrees, among other things, in consideration of the annual fee of $15, to make no charge "for collections made by use of special office letters or system of reference lists." The defendant, in his testimony, negatives the claim in his answer that he sent the name of the plaintiff to the association in the discharge of his duty to it as a member, and affirmatively states that the plaintiff came to him, and asked him to take his name out of the list, and that he told the plaintiff he would do so just as soon as he paid the four dollars. It is idle to talk about privileged publications, or the adjudged cases applicable to the legitimate business of a commercial agency, in view of the undisputed facts in this case.

There being no question as to the publication being privileged, the several requests, which were refused, were not applicable to the case, and, though some of them were abstractly correct, yet all were properly refused. The trial court instructed the jury that if, from the evidence, they found that the defendant acted in the premises willfully, maliciously, and with a reckless disregard of the rights of the plaintiff, they might give exemplary damages. This was excepted to, and is urged as error. There was evidence in the case tending to show that the defendant so acted, and the instruction was therefore correct. The other exceptions of the defendant to the instructions of the court have been considered, and we are of the opinion that, when read in connection with all that the court said to the jury on the subject to which they referred, the instructions were correct.

4. The evidence is sufficient to sustain the verdict. In addition to the evidence we have referred to, there was further evidence tending to show that there were some 12 members of the association in Belle Plaine, the plaintiff's home; that they were business men, and must have understood that the circular referred to the plaintiff; that the plaintiff did not owe the bill, and that the defendant never made any attempt to collect it by suit. The plaintiff testified: "I went to see Mr. Sielaff some time in February, and I asked Mr. Sielaff if he put my name on the black list, and he said, 'Yes,' and asked me if I wanted to pay it, and I told him, 'No, sir;' I didn't owe it; and, says he, 'What are you going to do about it?' and then I asked him if he would publish a retraction in the Belle Plaine Herald, and he said, 'No, sir;' that he put my name on that list, and he was going to

keep it there till I paid it." If the evidence on the part of plaintiff was true,—and of this the jury were the sole judges,—the conduct of the defendant merits the condemnation of honorable men. He ought to have given the plaintiff, if his evidence is true, a fair and manly opportunity before an impartial tribunal to make good his claim that he did not owe the bill, instead of placing him in the pillory with insolvent and dishonest debtors for the purpose of forcing him to pay.

Order affirmed.