[No. 6013. Decided September 10, 1906.]

JOHN WOODHOUSE, *Appellant,* v. J. B. POWLES *et al.,* *Respondents.*[1]

LIBEL AND SLANDER—REPORTS BY CREDIT ASSOCIATION—LAWFULNESS. An agreement between members of an association of wholesale grocers, to report delinquent retailers, and refuse them credit until their debt to any member of the association is paid, is not unlawful so as to render any false report libelous *per se*, especially where the retailer is advised in advance of such agreement.

LIBEL — ACTUAL DAMAGES — EVIDENCE — SUFFICIENCY. A retail grocer who was by mistake reported delinquent to an association of wholesale dealers, who thereupon refused him credit, is not entitled to judgment for more than nominal damages for libel, where it appears that the mistake was discovered the next day and his credit restored, and no claim is made that he suffered from injury to feelings or humiliation or injury to credit, and he was unable to give an estimate of the amount of his losses from being unable to fill certain orders on the day in question.

DAMAGES—PUNITIVE DAMAGES. Punitive or exemplary damages are not recoverable in this state.

APPEAL—REVIEW—HARMLESS ERROR—DAMAGES—NONSUIT WHERE PLAINTIFF ENTITLED TO NOMINAL DAMAGES. Where the sole object of

[1]Reported in 86 Pac. 1063.

the action is the recovery of damages, it is not prejudicial error to grant a nonsuit upon failure to prove substantial damages, although the plaintiff was shown to be entitled to nominal damages.

Appeal from a judgment of the superior court for King county, Albertson, J., entered September 28, 1905, in favor of the defendants, upon granting a nonsuit at the close of plaintiff's case, in an action for libel. Affirmed.

*F. A. Gilman,* for appellant, inter alia, to the point that such communications by credit associations were wrongful and libelous, cited: *Weston v. Barnicoat,* 175 Mass. 454, 56 N. E. 619, 49 L. R. A. 612; *Muetze v. Tuteur,* 77 Wis. 236, 46 N. W. 123, 20 Am. St. 115, 9 L. R. A. 86; *Taylor v. Church,* 4 Selden 452; *King v. Patterson,* 49 N. J. L. 417, 9 Atl. 705, 60 Am. Rep. 622; *Sunderlin v. Bradstreet,* 46 N. Y. 188, 7 Am. Rep. 322; *Sanderson v. Caldwell,* 45 N. Y. 398, 6 Am. Rep. 105; *Hartnett v. Plumbers' Supply Association,* 169 Mass. 229, 47 N. E. 1002; *Samples v. Carnahan* (Ind.), 51 N. E. 425; *White v. Parks,* 93 Ga. 633, 20 S. E. 78; *Ertz v. Produce Exchange,* 79 Minn. 140, 79 Am. St. 433, 48 L. R. A. 90; *Doremus v. Hennessy,* 176 Ill. 608, 68 Am. St. 203, 43 L. R. A. 797; *Barr v. Essex Trades Council,* 53 N. J. Eq. 101, 30 Atl. 881; *King v. Patterson,* 49 N. J. L. 417, 60 Am. Rep. 622; *Odgers, Libel & Slander,* 19-29-80, 81, and cases cited; *White v. Parks,* 93 Ga. 633, 20 S. E. 78. The question of damage was for the jury. *Boogher v. Knapp,* 76 Mo. 457; *Price v. Whitely,* 50 Mo. 439; *Republican Pub. Co. v. Miner,* 12 Colo. 77; *Whittemore v. Weiss,* 33 Mich. 348; *Hunt v. Bennett,* 19 N. Y. 173; *Evening News Ass'n v. Tryon,* 42 Mich. 549, 4 N. W. 267; *Sheahan v. Collins,* 20 Ill. 325, 71 Am. Dec. 271; *Knight v. Foster,* 39 N. H. 576; *Ottawa Gas Light Co. v. Graham,* 28 Ill. 73; *Buckstaff v. Hicks,* 94 Wis. 34, 68 N. W. 403; *Humphries v. Parker,* 52 Me. 502, 59 Am. St. 853, note 857.

*James Kiefer,* for respondents.

FULLERTON, J.—The appellant, at the time of the transactions hereinafter mentioned, was a groceryman in the city of Seattle engaged in the business of conducting a retail grocery store. The respondents were wholesale fruit and produce dealers in the same city, and were members of a voluntary association, composed of some fourteen other dealers engaged in the same business, known as the Seattle Produce Association. The object of the association was to establish a uniform credit system. The members drew up articles of agreement, fixing the terms on which credit would be granted to the retail dealers, in which, among other things, they provided that bills for produce sold to retail dealers should become due and payable on a day certain following the sale, and if not paid on that day the dealer should be declared delinquent, and thereafter the members of the association would not extend credit to him until he was reported clear upon the books of the dealer who had sold him the produce. Copies of this agreement with a circular letter calling attention to it was sent to all the retail dealers in Seattle and vicinity, one of such copies being received by the appellant.

On January 5, 1904, the appellant's employee applied for certain green groceries of one of the dealers belonging to the association and was informed by him that the appellant had been reported delinquent, and that any goods sold him would have to be paid for in cash. The employee reported to the appellant what the dealer had said and was directed to return without the goods. On the next morning the employee again appeared and inquired which of the dealers had returned the appellant as delinquent. On being informed that the respondents had so reported, he went to their place of business, when the matter was inquired into. It was then ascertained that the respondents had returned the appellant as delinquent by mistake, as he was not then indebted to them in any sum whatsoever—the mistake arising from the fact that a sales-

man of the respondents had failed to report to their book-keeper that the appellant had countermanded an order for a case of lettuce which had been set apart for him and charged to his account earlier in the day. Immediately on discovering the mistake the appellant's credit was restored, and he was permitted to purchase produce on the usual terms.

The appellant conceived that he was damaged in the sum of five thousand dollars by the act of the respondents, and brought this action to recover that sum. On the trial, at the conclusion of his evidence, the trial judge sustained a motion for a nonsuit and afterwards entered judgment dismissing the action, from which judgment this appeal is taken.

The ruling of the trial judge was based on the finding that the evidence on behalf of the appellant failed to show that he had suffered any actual pecuniary loss other than would be covered by mere nominal damages. Our perusal of the evidence leads us to the same conclusion. Nowhere in his evidence does the appellant claim that he had suffered from feelings of disgrace, shame, humiliation, mortified pride, or mental anguish of any kind, because of the act of the respondents, or that his credit or reputation for honesty as a merchant had been in any manner impaired by that act. On the contrary his evidence shows that it was no new experience for him to be on the association's delinquent list; and that he regarded the position as nothing more than a mere inconvenience, since its effect was to require him to pay cash for his green groceries on delivery instead of settling for them at the end of the week. He did testify, however, that because he could not fill certain orders given on the day he procured no produce he lost some trade, and possibly some customers, but he was not able to give even an estimate as to the amount of his losses in this respect. This, as we say, might justify a recovery of nominal damages, but clearly no recovery for substantial damages could be sustained under

such proofs, if the appellant is to recover only compensatory damages for his injury.

Counsel for the appellant, however, as we understand his argument, takes the position that the association was in itself unlawful; and that the act of the respondents in notifying their fellow members that the appellant was delinquent on one of his purchases when he was not so delinquent was an act libelous *per se* from which malice is presumed, and entitles him in itself to recover substantial damages without proofs of any other fact. As to the first position we do not think it tenable. Courts, it is true, uniformly hold it libelous for a person or association of persons to attempt to coerce the payment of debts by holding the debtors out to the world as being dishonest and unworthy of credit, or to publish their names in circulars, pamphlets, and books for distribution among dealers, as persons who have contracted debts and failed to pay them; but no court, so far as we are advised, has held it unlawful for dealers in a common line of goods to agree among themselves not to extend credit to a person who had defaulted in a payment to some one of them. The right that each one has to protect his legitimate interests justifies such an agreement. And it being lawful to enter into such an agreement, it is, of course, lawful, and hence not libelous, for one party to the agreement to report to the others the names of such of his customers as have become delinquent; and especially is this so where, as in this case, the purchaser is informed in advance of his purchases that a denial of further credit will be the consequence of his failure to pay at the required time.

An illustrative case of the class holding it unlawful to attempt the collection of debts by advertisements tending to bring the debtor into public contempt is *Muetze v. Tuteur,* 77 Wis. 236, 46 N. W. 123, 20 Am. St. 115, 9 L. R. A. 86. There an association having for its expressed objects "the collection of bad debts" undertook to coerce the payment of a

disputed claim in favor of one of its subscribers by sending to the debtor letters contained in envelopes of a conspicuous character, endorsed with the name and object of the association together with the words "Main Office Notice," and afterwards printing and circulating a book containing the name of the debtor, with others, as being a person unworthy of credit. These acts were held libelous and the debtor allowed to recover. But the principle upon which the case rests differs from that involved in the case before us. Public policy forbids the resort to this method for the purpose of collecting debts, but no rule of public policy forbids a wholesaler to refuse to credit a retail dealer who has made default in his payments to another wholesaler, and it follows, as of course, that he may resort to any legitimate method for ascertaining who is in default. As we hold that the method pursued in this case was a legitimate one, no action can be founded on that act alone. For cases illustrating the general question, see: *White v. Parks,* 93 Ga. 633, 20 S. E. 78; *Traynor v Sielaff,* 62 Minn. 420, 64 N. W. 915; *McIntyre v. Weinert,* 195 Pa. St. 52, 45 Atl. 666; *Ulery v. Chicago Live Stock Exchange,* 54 Ill. App. 233; *Hartnett v. Plumbers' Supply Ass'n,* 169 Mass. 229, 47 N. E. 1002, 38 L. R. A. 194.

But, while it was lawful for the respondents to enter into the agreement shown, and to report the appellant as delinquent if in fact he was delinquent, they are liable for an abuse of the right, and are liable to the appellant for all actual damages suffered by him if they reported him as delinquent when he was not in fact delinquent. In determining the amount of damages, however, the question of malice is of no moment. In this jurisdiction punitive or exemplary damages cannot be recovered, unless their recovery is especially provided for by statute. *Spokane Truck & Dray Co. v. Hoefer,* 2 Wash. 45, 25 Pac. 1072, 26 Am. St. 842, 11 L. R. A. 689; *Willson v. Northern Pac. R. Co.,* 5 Wash. 621, 32 Pac. 468, 34 Pac. 146; *Sloan v. Langert,* 6 Wash.

26, 32 Pac. 1015; *Seattle Crockery Co. v. Haley,* 6 Wash. 302, 33 Pac. 650, 36 Am. St. 156; *Atrops v. Costello,* 8 Wash. 149, 35 Pac. 620; *Levy v. Fleischner, Mayer & Co.,* 12 Wash. 15, 40 Pac. 384. And, as proof of ᴸalice is not necessary to recover actual or compensatory damages, but are shown only for the purpose of enabling the plaintiff to recover punitive or exemplary damages [*Davis v. Tacoma R. & Power Co.,* 35 Wash. 203, 77 Pac. 209; *Byrne v. Funk,* 38 Wash. 506, 80 Pac. 772; 18 Am. & Eng. Ency. Law (2d ed.), 1002], it must follow that a plaintiff may recover all of the damages to which he is entitled by reason of the false publication regardless of any motive the defendant may have had in publishing it; that is to say, he is entitled to recover such damages as will actually compensate him for the injury suffered, and nothing more.

It is not, of course, intended to be asserted that it is necessary in order to enable a person to recover general damages for libels actionable *per se* that he must show some actual pecuniary loss, or that his injuries are capable of some definite money valuation. Injuries to feelings, and mental suffering, injuries to character and reputation, and similar injuries incapable of definite money valuation can be recovered for, when proven, in actions for libel as in actions for corporal injuries, but we do hold that there must be some evidence that such injuries actually followed from the libel before a recovery can be had, as they are not to be inferred from the mere fact that a libel has been proven.

Since we hold that the appellant offered no evidence of substantial damages, the foregoing considerations require us to hold that the trial court did not err in refusing to submit the question of the amount of his damages to the jury. It has been suggested, however, that as the evidence justified a recovery of nominal damages the court erred in taking the case from the jury entirely, but should have instructed them to return a verdict of nominal damages, allowing the plaintiff

the costs of the action. But there was no error in this respect. This court, in common with many other courts, has held that where the sole object of the recovery is damages, a failure to prove substantial damages is a failure to prove the substance of the issue and entitles the defendant to a judgment of nonsuit, or a judgment that the appellant take nothing by his action. It is only where the verdict of the jury will determine some property or personal right, having value of itself as a right, that the verdict must be taken regardless of the question whether the amount returned is substantial or nominal. *Commercial Inv. Co. v. National Bank of Commerce,* 36 Wash. 287, 78 Pac. 910; *Johnson v. Cook,* 24 Wash. 474, 64 Pac. 729; *Tracy v. Hacket,* 19 Ind. App. 133, 49 N. E. 185.

The judgment is affirmed.

MOUNT, C. J., HADLEY, RUDKIN, DUNBAR, and CROW, JJ., concur.