## J. Hartman Company, Inc., v. Hyman & Lieberman.

*Slander and libel—Privileged communication by member of credit association to other members touching customers' unpaid bills.*

1. An untrue communication by a member of a credit association to other members blacklisting a person as a delinquent debtor is libellous *per se* if it was made partly for the purpose of coercing payment of the debt, and neither express malice nor special damage need be proved.

2. Defendants were members of the Philadelphia Produce Credit and Collection Bureau, under the rule of which it was the duty of members to report to the bureau delinquent customers, and other members, upon being notified of such delinquency, were bound not to extend credit to the delinquent until duly notified by the secretary of the bureau that the overdue account had been paid. Plaintiff, J. Hartman, Co., Inc., was a customer of the defendants and carried on a retail produce business at the Terminal Market. Defendants had also another customer by the name of Hartman, who conducted a business at Trenton, New Jersey, and who was indebted to the defendants in the sum of $216.25. Defendants telephoned the bureau July 25, 1923, that the plaintiff, J. Hartman Company, was indebted to them in the sum of $216.25, and defendants' book-keeper subsequently wrote to the bureau that J. Hartman, Terminal Market, was delinquent in his account. The Trenton Hartman was not a member of the bureau, and the bureau, on receiving notice, notified its members, and J. Hartman Co., Inc., was unable to obtain supplies to conduct its stand at the market on the day following the notice. This action was brought to recover damages. At the trial, neither malice nor special damage was proved; the jury returned a verdict for plaintiff in the sum of $500. On motion by defendants for judgment *n. o. v.*: *Held*, that binding instructions had been properly refused.

Motions for judgment *n. o. v.* and on point reserved. C. P. No. 2, Phila. Co., Sept. T., 1923, No. 343.

*Robert F. Jackson* and *Harold B. Beitler*, for plaintiffs.

*Ruby R. Vale*, for defendants.

STERN, P. J., May 8, 1925.—The defendants are among 137 wholesale produce jobbers who are members of the Philadelphia Produce Credit and Collection Bureau. The by-laws of the bureau provide that every bill for fresh fruits and vegetables is due and payable on the Saturday after the sale shall have been made, and that if the bill is not paid by the purchaser by the Wednesday following such Saturday, the creditor, who is a member of the bureau, must report that fact to the bureau. If he fails to do so, he is subject to a fine. The by-laws further provide that the members are bound to refuse to sell on credit to any debtor whose delinquency is so reported by a member until duly notified by the secretary of the bureau that the overdue account has been paid.

In the present case the defendants had among their customers the plaintiff concern, which carries on a retail produce business in the Terminal Market, Philadelphia, and also another customer by the name of Hartman, whose place of business was in Trenton, N. J., the latter being indebted to the defendants in the sum of $216.25. The defendants telephoned to the bureau on Wednesday, July 25, 1923, that the J. Hartman Company was indebted to them in the sum of $216.25, and the defendants' book-keeper, on the same day, in writing, notified the bureau that "J. Hartman, Terminal Market," was delinquent on his account with the defendants in the sum of $216.25, whereas, in fact, the plaintiff was not indebted to the defendants at all. Accordingly, the bureau sent immediate notice to all of its members of the report received from the defendants, with the result that when the head of the plaintiff's business went in the early hours of the next day to make his

customary purchases he was met on all hands with a statement that, being delinquent in his account with one of the members of the bureau, he could not purchase any goods on credit, and, not being prepared thus unexpectedly to purchase for cash, he was unable to purchase any merchandise that morning, and, accordingly, could not supply his stand at the Terminal Market with the produce necessary to carry on his business for that day. Having called the defendants' attention to the situation, they discovered their error and notified the bureau, and the latter sent a notice to all of its members withdrawing the plaintiff's name from the delinquent list. The present suit is for damages for slander. At the trial, neither malice nor special damage was proved. The trial judge reserved for further consideration the defendants' point for binding instructions. The jury returned a verdict for the plaintiff of $500, and the present motions are by the defendants for judgment *n. o. v.* and for judgment on the point reserved.

The defendants contend that on the written notice of delinquency the name of the defendant was stated to be "J. Hartman," whereas the suit is by "J. Hartman Co., Inc." It appears, however, that J. Hartman (Jacob Hartman) is the president of J. Hartman Co., Inc. The company was apparently well known in the trade, as it had been in business about thirteen or fourteen years. No particular point was made at the trial in reference to the variation in name. Considering that the address "Terminal Market" was given by the defendants to the bureau and by it to the trade, that there is no evidence of there being any other "Hartman" in the Terminal Market, that there could not have been any doubt in the minds of the dealers as to the identity of the concern referred to, and that there was in fact no attempt made to prove that the reference was to any other than the present plaintiff, it is not thought that this point is substantial. It may also be added that in the telephone conversation from the defendants to the bureau it was stated, according to the bureau's secretary in charge of the office for that day, that the $216.25 was due from J. Hartman Company.

The real question raised by the defendants on the present motion is their contention that the communication was privileged, and that, therefore, in the absence of proof of express malice and of special damage, the plaintiff cannot recover. As stated by counsel for the defendants in his brief: "The only question, then, involved is the nature of the communication; if qualifiedly privileged, the rules must be made absolute, and if not, they should be discharged."

The exact question involved does not seem to have been ruled in our own State. There are cases more or less in point in other jurisdictions, and, while they are not entirely in harmony, the conclusion at which the court has arrived is in conformity with the weight of authority of the adjudicated cases, and, in the opinion of the court, is consistent with the reason and principles of the law applicable to the situation.

The point upon which the case turns is whether the privilege which the defendants otherwise would have had is taken away by reason of the fact that the purpose of the communication in question was obviously not only to give trade information to other dealers, but also largely to collect the alleged bill due to the defendants. As above pointed out, the by-laws of the bureau provide that the members bind themselves not to extend any credit to a debtor until he shall have paid the delinquent account, and, of course, this was in effect a blacklisting of a debtor in such manner as to compel him to pay what the complaining member claimed was due, or to go out of business if he needed any credit in the purchase of his merchandise.

As far as our own State is concerned; we have two cases which have been cited by counsel as authority. The first is McIntyre v. Weinert, 195 Pa. 52. That case involved exactly the same bureau and the same facts as in the present one, but the case came up in another way, namely, by demurrer to the plaintiff's statement of claim. The statement averred malice in fact, and the Supreme Court, reversing the judgment of the court below, held that the demurrer should have been overruled, saying in effect that, whether or not the communication was privileged, the plaintiff had averred that the writing was malicious, "and on this demurrer, of course, the question cannot be determined, but the cause must be sent to a jury." The case, therefore, is not helpful as to the present situation.

The other Pennsylvania case referred to is that of McDonald v. Lee, 246 Pa. 253. In that case the defendant belonged to an association of physicians, which prepared for the exclusive use of its members a list of the names of patients who were slow in making payments. The defendant caused the plaintiff's name to be placed upon this list. The Supreme Court held, affirming the court below, that the communication was a privileged one, and that, therefore, binding instructions in favor of the defendant were proper. The court points out, however, that there was no understanding among the members of the association that professional services should be refused to those whose names appeared upon the delinquent list, and that it did not appear that, by reason of the report, credit was refused to plaintiff, nor that any particular member of the association refused to serve him in a professional way. Inasmuch as the plaintiff's chief contention in the present case is that the distinguishing feature upon which it relies is the fact that the delinquent list was intended largely as a means of enforcing collection of the bills due members of the bureau, this Pennsylvania case does not illumine the present one.

In Reynolds v. Plumbers' Material Protective Ass'n, 63 N. Y. Supp. 303 (affirmed in 169 N. Y. 614), the defendant was an association of merchants incorporated for the purpose of furnishing information to its members of the standing and character of their customers. The plaintiff refused to pay his account to one of the members of the association, and all of the members were notified of this fact, which prohibited them, under their by-laws, from selling goods to plaintiff, except for cash, until his account was settled. It was held that the communication was privileged, and, in the absence of express malice, was not libelous. The case seems to have been decided upon two points. One was that the communication was made by a member of the association who, under the by-laws, was obligated to his fellow-members to make the communication. This seems to be an unsatisfactory reason for the decision, in that a person cannot, by entering into a contractual obligation, thereby give himself the right to do something which otherwise he would not be allowed to do. The second point featured in the opinion of the court was that the purpose of the association was to protect the members in their business against irresponsible parties, and that this was not an unlawful purpose, and, therefore, the exercise of such a right could not amount to a legal wrong. This seems to involve a confusion of thought. It might be legal for the members of the association to enter into such an arrangement, but this fact would not be conclusive as to the effect of libels committed by them in carrying out an otherwise lawful purpose.

In Woodhouse v. Powles, 43 Wash. 617, it was held that an agreement between members of an association of wholesale grocers to report delinquent retailers and refuse them credit until their debt to any member of the asso-

ciation was paid is not unlawful so as to render any false report libelous *per se*. Here, too, the court stated that it was not unlawful for dealers in a common line of goods to agree among themselves not to extend credit to a person who had defaulted in a payment to some one of them. The view as to the legality, however, of the association's arrangement does not seem necessarily to lead to the conclusion that a libel uttered by one of the members in pursuance of the plan is a privileged communication.

On the other hand, the general trend of authority is *contra* to the two cases just cited.

In Werner v. Vogeli, 10 Kans. App. 536, there was an association known as the Merchants' Protective Association, the by-laws and rules of which were much the same as in the present case, there being a covenant among the members not to give any credit to a person reported by any members as delinquent. The court held that malice was presumed, and that the communication did not enjoy any privilege.

In Traynor v. Sielaff, 62 Minn. 420, the association involved was called the Retail Merchants' Protective Association. The court said: "The claim of the defendant that the publication was privileged is clearly without merit, for the uncontradicted evidence shows that the publication was made by the defendant to serve his own private purpose of coercing the plaintiff to pay a disputed bill of $4."

In John Brenner Brewing Co. v. McGill, 23 Ky. L. R. 212 (62 S. W. Repr. 722), the Cincinnati Brewers' Protective Association had an arrangement similar to that in the present case. A customer of one of the members was improperly reported as delinquent, and he sued for damages. The court held that, if the notice was given for the purpose of extorting payment of an alleged debt or for the purpose of disabling the plaintiff from dealing with other members of the association, there was legal malice authorizing the recovery of damages.

In Muetze v. Tuteur, 77 Wis. 236, the defendants were members of the United States and Canada Dealers' Protective and Detective Association. Members were bound to give notice to one another of unpaid debts owed to them, but it appeared that a major purpose of the association was to collect the debts alleged to be due. The court held that a communication as to an alleged unpaid debt was not privileged.

In Weston v. Barnicoat, 175 Mass. 454, Holmes, C. J., now a Justice of the Supreme Court of the United States, held that where a member of an association, upon the plaintiff's declining to pay a claim of the member, reported the plaintiff's name to the association, with the result that the name was placed upon a black list, as provided by the by-laws of the association, and this caused the discontinuance of business dealings with the plaintiff by members of the association, the communication was not privileged. The court held that the by-laws afforded the defendant no justification for his action, in that they merely expressed the terms on which he saw fit to enter into a voluntary organization, saying that "a man cannot justify a libel by proving that he has contracted to libel." The court further stated that: "Of course, we do not mean to say that the statement might not have been privileged if believed to be true, and if the purpose of the association and publication was and was understood to be merely to give information to the members concerning the credit of people with whom they might deal. But none of the requests were limited to such a state of facts. The difficulty in supposing it is that the by-laws expressly require the members to have no dealings with any person whose name is on the list."

It thus appears that the decided weight of authority in such cases is to hold that no privilege attaches in such cases, and that the ordinary rule applies, that where a false statement is made which tends to injure a man in his business or his credit, the statement is libelous *per se,* and neither express malice nor special damage need be proved. That this is the general law is shown by the statements to this effect in the text-books and digests. Thus, in 36 Corpus Juris, 1267, it is said: "The doctrine of qualified privilege has been applied to information furnished to members or subscribers by mutual protective associations. On the other hand, it is held that where such an association is formed, not for the purpose of keeping its subscribers informed as to the credit and standing of the parties with whom they deal, but of blacklisting delinquent debtors in order to compel the payment of debts already due, publications made in furtherance of such a purpose are not privileged."

And in Newell on Slander and Libel (4th ed.), 441, it is said that: "Merchants have the right to organize for their own protection, and to enter into mutual agreements for the purpose of giving each other the benefit of their knowledge about those in the community who meet their obligations promptly and those who do not; and a communication on this subject, made by a member of the association to the other members, is privileged if made in good faith and in such a manner and on such an occasion as properly to serve the purposes of the association. But a communication made by one member to the others under such an arrangement, through malice, is not privileged. . . . Nor are such communications privileged where they are made use of to blacklist delinquent persons with a view to coercing payment of debts rather than protection of the members."

And in 2 American and English Annotated Cases, 57, the law is summarized from a large number of cases there cited, and it is stated, in general, that "a communication by a member of a credit association to the other members, blacklisting a person as a delinquent debtor, is libelous if it is made for the purpose of coercing the payment of a debt."

Passing from a study of the authorities to an analysis of the underlying principles of the law of libel and slander, it would seem that the doctrine of qualified privilege should not be extended to the communication involved in the present case. It is, of course, settled that where credit associations are formed for the purpose of the communication by members to one another of information regarding their respective debtors, such communications enjoy a qualified privilege. Unless express malice is proved, they are not libelous so as to give to the injured party a right of action. This is on the well determined principle that a communication is qualifiedly privileged where the person making it has an interest in its subject-matter, and the person to whom it is made has a corresponding interest or some duty in connection with the matter. If one merchant writes to another, asking for information as to the credit standing of a third person, the answer to such inquiry is qualifiedly privileged; the circumstances imply the absence of malice, and, therefore, malice in fact must be proved. If, instead of waiting for formal inquiries, members of an association agree to exchange such information voluntarily with one another, the situation is not altered, because this may be construed to amount to an outstanding inquiry on the part of each member of all others, with the same force and effect as though a specific inquiry had been made in any given case. Where, however, there is joined to the mere desire to give information to others the motive of pecuniary self-interest in the person making the communication, as, for example, in order to enable him to collect

### J. Hartman Company, Inc., v. Hyman & Lieberman.

a debt due or alleged to be due, the reason for the rule of qualified privilege disappears. There is no element of duty, legal, moral or social, in giving the information; neither, as to the particular case, have the members of the association a common interest. The primary interest is on the part of the informer, and it consists in exploiting his own financial purposes by seeking the collection of a debt alleged to be due to him. What is the basis for the rule of qualified privilege? In cases where there is a duty or common interest, the circumstances are such as to preclude the likelihood of malice, and, therefore, the latter must be proved. The communication is made in pursuance of a disinterested duty or business obligation. If, however, a man, in making an untrue statement, is seeking solely or primarily his own profit, the likelihood of there being no actual malice disappears; there is just as much probability of malice as in the case of an ordinary statement made by one person of another, and, therefore, there is no reason why such a communication should be held to enjoy any privilege. A leading case on the subject of libel in England is that of Macintosh v. Dun (1908), A. C. 390, 77 L. J. P. C. 113; 99 L. T. N. S. 64. This was a decision of the English Privy Council on an appeal from the High Court of Australia, and it held that a mercantile agency engaged in the business of obtaining information with reference to the commercial standing and position of persons in business, and communicating such information confidentially to subscribers in response to their specific inquiries, is not privileged as to such communications within the law of libel and slander. The decision in itself is not applicable to the present case, but it is important to note that the reason for the conclusion arrived at is that the business carried on by the Dun Agency is a business for profit out of motives of self-interest, and, therefore, is to be distinguished from an enterprise in the general interest of society. In other words, the decision rests upon the thought that communications are privileged only when made from apparently disinterested motives, and that the privilege does not extend to a case where there is a motive of self-interest, at least in a pecuniary sense.

In the present case it is true that the purpose of the communications between the members of the bureau was, no doubt, partly to inform those to whom they were addressed as to the poor standing of the alleged debtor so as to protect them in their dealing with him, but it is also clear that an additional and apparently major purpose was to enable the particular creditor to enforce payment of the debt by making it impossible for the alleged debtor to enjoy any credit in his business and to make any purchases on credit until he had paid the debt claimed. No more potent measure of coercion can be conceived than thus cutting off, as it did, and as it was aimed to do, the only sources from which merchandise could be obtained on a credit basis, for without credit a business cannot be conducted in any practical degree. In short, when a member of the bureau gave information as to a debtor claimed to be delinquent, the motive, under the by-laws of the association, seems to have been not so much to display a red flag to the other members as effectively to obtain collection of his own claim, but whichever motive was primary, at least the element of pecuniary self-interest entered in large measure into the situation, and, therefore, under the weight of authorities cited, and according to what is conceived to be the reason and principle of the law, there should not be attached to such a communication the exceptional benefit of qualified privilege. It being admitted that such a conclusion necessitates the upholding of the verdict rendered by the jury, the defendants' motions for judgment n. o. v. and for judgment on the reserved point are accordingly overruled.