[No. 2597.  Decided June 25, 1897.]

CHRISTINE STEWART, *Respondent,* v. J. M. MAJOR, *Appellant.*

SLANDER — CHARGES OF WHOREDOM — PRIVILEGED COMMUNICATIONS — MALICE — PLEADING.

Under Code Proc., § 798, making every charge of fornication or whoredom falsely made against a female actionable as slanderous, such communications to third parties as, " She is nothing but an old whore," " This woman acknowledges that you sleep with her every night and I have reason to know that you are not the only one," and " She is an objectionable character; that man Adams is keeping her," if false entitle the woman injured thereby to a right of action for defamation of character.

Defamatory words spoken of another to an officer of the law are not privileged communications, unless made for the purpose of preventing a crime or for the purpose of detecting and bringing a criminal to punishment.

Where one recklessly makes defamatory remarks concerning another, stating as true what he does not know to be true, by reason of anger or spite, malice will be presumed.

In an action for defamation of character, the failure to charge in the complaint that the words were maliciously spoken is not objectionable, if other words expressive of malicious intent are used.

Appeal from Superior Court, Spokane County.—Hon. NORMAN BUCK, Judge.  Affirmed.

*Crow & Williams,* for appellant.
*William T. Stoll,* and *E. Fitzgerald,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is an action for defamation of character.  Upon the trial of the cause the jury returned a verdict in favor of the respondent for $1,000.  Six communications defamatory of the respondent were alleged to have been made by the appellant, three of which were

taken by the court from the consideration of the jury. The other three were submitted, and it will be necessary to notice only these. They were as follows:

"That on the 18th day of February, 1896, the defendant, in a certain discourse which he had with one J. T. Sullivan, in the presence and hearing of divers persons, spoke the following words concerning the plaintiff: 'She is nothing but an old whore, and I can get her out of my building on that charge, but I don't want to resort to that means as it would be bringing respectable women into court. It is a well-known fact that she is a whore.'"

"That on the 5th day of February, 1896, the defendant in a certain discourse which he had with one John O'Brien, in the presence and hearing of divers persons, spoke the following words concerning the plaintiff: 'She is an objectionable character; that man Adams is keeping her; I have been trying to get her out of my house for six months.'"

"That on the 15th day of December, 1895, the defendant in a certain discourse which he had with one L. M. Adams, in the presence and hearing of divers persons, spoke the following words concerning the plaintiff: 'This woman acknowledges that you sleep with her every night, and I have reason to know that you are not the only one. Ever since the night that she attempted suicide in my building I have wanted her out.'"

The brief of the appellant has been prepared in such an irregular manner that it has been with some difficulty that we have followed his argument. Many of the assignments of error, however, are based upon the theory that the words alleged to have been spoken by the appellant were not actionable *per se*, and did not fall within the purview of § 798 of the Code Proc., which is as follows:

"Every charge of incest, fornication, adultery, or whoredom falsely made by any person against a female, also words falsely spoken by any person charging such person with incest or the infamous crime against nature, either with mankind or the brute creation, shall be accountable

[actionable] in the same manner as in the use of slander-
ous words charging a crime, the commission of which would
subject the offender to death or other degrading penalties."

As to whether the words alleged to have been spoken to
Sullivan fall within this statute, there is no room for dis-
cussion, and the same may be said of the words alleged to
have been spoken to L. M. Adams. In regard to the words
alleged to have been spoken to John O'Brien, it is claimed
by the appellant that the expression, "that man Adams is
keeping her," might mean an entirely different thing from
the meaning placed upon it by the court, but we think that
the expression used, in connection with the other language
employed at that time, is not susceptible of any two con-
structions, and that, with the other expressions mentioned
above, it falls squarely within the statute.

As to the first, third, fourteenth and sixteenth assign-
ments of error which are first discussed by the appellant,
the record shows that they cannot properly be raised here,
as the objections were not raised in the court below, and,
if they had been, we think the objections could not obtain
under the pleadings, since the pleadings show that all the
material allegations of the answer, going to show the privi-
leged statement, were denied by the reply, and were in
issue in the case. In addition to the privileged character
of these statements, so far as the testimony is concerned,
while it is true that Sullivan was a police officer, it appears
that it was really not for the purpose of preventing any
crime that the communication was made to Sullivan, for
the appellant stated to Sullivan that he did not wish to re-
sort to the law to put the respondent out of his house, for
reasons which he then assigned; and the testimony of Sul-
livan was that it was after he informed the appellant that
the police had no jurisdiction in the matter that he spoke
the words attributed to him by the complaint. It is not

enough that the appellant should have been making this communication to an officer, but he must have made it for the purpose of preventng a crime, or to protect himself. This purpose is not even alleged in his defense, outside of the proof in the case. The rule is thus stated by Newell on Defamation, Slander and Libel, p. 500:

" Upon grounds of public policy communications which would otherwise be slanderous are protected as privileged if they are made in good faith in the prosecution of an inquiry regarding a crime which has been committed and for the purpose of detecting and bringing to punishment the criminal. All material statements made by the persons interested in the detection of the crime during their investigation and relevant thereto are privileged. For the sake of public justice charges and communications which would otherwise be slanderous are protected if made in good faith in the prosecution of an inquiry into a suspected crime. The law requires such charges to be made in the honest desire to promote the ends of justice and not with spiteful or malicious feelings against the person accused, nor with the purpose of obtaining any indirect advantage to the accuser. Nor should serious accusations be made recklessly or wantonly; they must always be warranted by some circumstances reasonably arousing suspicion. And they should not be made unnecessarily to persons unconcerned, nor before more persons nor in stronger language than necessary."

The communication made to O'Brien was utterly void of any privileged character. O'Brien was not an officer of the law and the words spoken to him were evidently spoken in a spiteful manner.

This case does not fall within the rule announced by this court in the case of *Kimble v. Kimble*, 14 Wash. 369 (44 Pac. 866). So far as the question of malice is concerned, and the burden of proof, the rule is stated as follows by Newell on Defamation, Slander and Libel, p. 322:

16—17 WASH.

"If a man is proved to have stated that which he knew to be false, no one need inquire further. Everybody assumes thenceforth that he was malicious, that he did do a wrong thing for some wrong motive. So if it be proved that out of anger, or for some other wrong motive, the defendant has stated as true that which he does not know to be true, and he has stated it whether it is true or not, recklessly, by reason of his anger or other motive, the jury may infer that he used the occasion, not for the reason which justifies it, but for the gratification of his anger or other indirect motive."

In relation to the omission of the word "malicious" from the complaint, we cite *White v. Nicholls*, 3 How. 266. On the objection to the question asked L. M. Adams, assignment No. 5, see *Burt v. McBain*, 29 Mich. 260. This will apply also to the objection to instructions given in relation to the intention of the person using the language. Many of these assignments we think are absolutely without merit. We have read the brief and the authorities cited carefully, and have also examined the record from beginning to end. We think the complaint was sufficient to sustain the judgment; that the law given by the court was substantially correct; that the instructions which were asked by the appellant and refused by the court had been in substance already given by the court, where they properly stated the law, and that no reversible error was committed by the court during the trial. So far as the weight of the testimony is concerned, as to whether the appellant sustained the charges which he had made against the character of the respondent, those questions were submitted to the discretion of the jury, and it has pronounced against him.

The judgment is affirmed.

SCOTT, C. J., and ANDERS, REAVIS and GORDON, JJ., concur.