[No. 15349.   Department Two.   June 12, 1919.]

# HARRY P. ECUYER, *Respondent*, v. NEW YORK LIFE INSURANCE COMPANY, *Appellant*.[1]

APPEAL (473)—REVIEW—LAW OF CASE.  The facts on a second trial being the same as on the former trial, the decision on the former appeal becomes the law of the case.

LIBEL AND SLANDER (16, 35)—EXCEEDING PRIVILEGE—EVIDENCE—SUFFICIENCY.  Charges by an insurance auditor and cashier that a cash clerk of an insurance company had stolen money, made at an interview with the clerk at which the father was present, are only qualifiedly privileged, and whether the statement was *bona fide* or malicious is a question for the jury, notwithstanding the defendant's officers testified positively that there was no malice and that they spoke and acted in good faith for the welfare of the company, where the charge was not confined to the admitted fact that the clerk was short a small sum in his accounts, it appeared that others in the office might have stolen the money from his cash drawer, a close cross-examination of plaintiff did not detract from his straightforward and convincing evidence, and thereafter other like slanderous statements were made to other parties.

CORPORATIONS (190)—REPRESENTATION BY AGENTS—SLANDER.  An insurance corporation is liable for a malicious slander uttered by its auditor and cashier charging a cash clerk with stealing, made upon inspecting and checking up his accounts, the same being within the scope of their employment.

LIBEL AND SLANDER (53)—INSTRUCTIONS.  In an action for slander, in which there was evidence that the defendant's officers had exceeded their privilege in charging a cash clerk with stealing, no just complaint can be made of submitting the question of exceeding the privilege, requiring the plaintiff to show malice, and if the privilege was exceeded and malice shown, authorizing the jury to fix the damages, but allowing no special damages for loss of employment in the absence of any evidence thereof.

SAME (36)—DAMAGES—MEASURE.  In an action for slander, in charges by a life insurance company that its cash clerk had stolen money, made to his father, in excess of privilege and repeated to others, the repetition and republication may be considered as to the question of malice and in aggravation of compensatory damages.

SAME (37)—DAMAGES—MENTAL SUFFERING.  In an action for slander, in charges by a life insurance company that its cash clerk

[1]Reported in 181 Pac. 871; 186 Pac. 327.

had stolen money, the words being actionable *per se* without reference to plaintiff's business or professional character, he is entitled to recover for mental suffering.

SAME (38)—DAMAGES—AMOUNT. A verdict for $6,000 reduced by the trial court to $3,000 for slander by an insurance company in charging its cash clerk with stealing, is not excessive.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered November 21, 1918, upon the verdict of a jury rendered in favor of the plaintiff, in an action for slander. Affirmed.

*H. T. Granger* (*Jas. H. McIntosh*, of counsel), for appellant, contended, among other things, that the corporation was not liable because the officers were not acting within the scope of their employment. *Southern Express Co. v. Fitzner,* 59 Miss. 581, 42 Am. Rep. 379; *Aetna Life Ins. Co. v. Paul,* 37 Ill. App. 439; *Behre v. National Cash Register Co.,* 100 Ga. 213, 27 S. E. 986, 62 Am. St. 320; *Kane v. Boston Mutual Life Ins. Co.,* 200 Mass. 265, 86 N. E. 302; *Stewart Dry Goods Co. v. Heuchtker,* 148 Ky. 228, 146 S. W. 423; *National Packing Co. v. Boullion,* 105 Ark. 326, 151 S. W. 244; *Singer Mfg. Co. v. Taylor,* 150 Ala. 574, 43 South. 210, 9 L. R. A. (N. S.) 929; *Sawyer v. Norfolk & S. R.,* 142 N. C. 1, 54 S. E. 793, 115 Am. St. 716; *Childs v. Bank of Missouri,* 17 Mo. 213; *Eichner v. Bowery Bank of New York,* 48 N. Y. Supp. 978; *Waters-Pierce Oil Co. v. Bridwell,* 103 Ark. 345, 147 S. W. 64, Ann. Cas. 1914B 837; *Lindsey v. St. Louis, I. M. & S. R. Co.,* 95 Ark. 534, 129 S. W. 807.

The statements were qualifiedly privileged. *Ecuyer v. New York Life Ins. Co.,* 101 Wash. 247, 172 Pac. 359, L. R. A. 1918E 536; *Fahey v. Shafer,* 98 Wash. 517, 167 Pac. 1118.

The privilege shifted the burden of proof and made it necessary for plaintiff to show actual or express malice. *Holmes v. Royal Fraternal Union,* 222 Mo.

556, 121 S. W. 100, 26 L. R. A. (N. S.) 1080; *Laughlin v. Schnitzer,* 106 S. W. (Tex. Civ. App.) 908; *Ashcroft v. Hammond,* 197 N. Y. 488, 90 N. E. 1117; *Hayden v. Hasbrouck,* 34 R. I. 556, 84 Atl. 1087, 42 L. R. A. (N. S.) 1109; *Houston Chronicle Publishing Co. v. McDavid,* 157 S. W. (Tex. Civ. App.) 224; *Hansen v. Hansen,* 126 Minn. 426, 148 N. W. 457, L. R. A. 1915A 104.

In an action for libel or slander damages cannot be assessed for physical sickness alleged to have been caused by the libel or slander. *Butler v. Hoboken Printing & Publishing Co.,* 73 N. J. L. 45, 62 Atl. 272; *Cyrowski v. Polish-American Pub. Co.,* 196 Mich. 648, 163 N. W. 58; *Houston Chronicle Pub. Co. v. McDavid, supra.*

*James R. Chambers,* for respondent, contended that a corporation is liable for its slanders or libels when perpetrated by an agent when acting within the scope of his authority. *Gallagher v. Singer Co.,* 177 Ill. App. 198; *Pennsylvania Iron Works Co. v. Voght Mach. Co.,* 129 Ky. Law 861, 96 S. W. 551; *Fogg v. Boston & L. R. Corp.,* 148 Mass. 513, 20 N. E. 109, 12 Am. St. 583.

The old rule that a corporation could not be liable for slander or libel has been done away with. 25 Cyc. 428; 1 Clark & Marshall, Private Corporations, pp. 627-629; Newell, Slander and Libel (3d ed.), pp. 436-439; *Grand Union Tea Co. v. Lord,* 231 Fed. 390, Ann. Cas. 1918C 1118; *Empire Cream Separator Co. v. De Laval Dairy Supply Co.,* 75 N. J. L. 207, 67 Atl. 711; *Rivers v. Yazoo & M. R. Co.,* 90 Miss. 196, 43 South. 471, 9 L. R. A. (N. S.) 931; *Williams v. Planters Ins. Co.,* 58 Miss. 759, 34 Am. Rep. 494; *International & G. N. R. Co. v. Edmundson,* 185 S. W. (Tex. Civ. App.) 402; *Howe Machine Co v. Souder,* 58 Ga. 64; *Pfister v. Milwaukee Free Press Co.,* 139 Wis. 627, 121 N. W. 938; *Hardoncourt v. North Penn. R. Co.,* 225 Pa. 379,

74 Atl. 243; *Peterson v. Western Union,* 65 Minn. 18, 67 N. W. 646, 33 L. R. A. 302; *Dobbin v. Chicago, R. I. & P. R. Co.,* 157 Mo. App. 689, 138 S. W. 682; *Alabama & V. R. Co. v. Brooks,* 69 Miss. 168, 13 South. 847, 30 Am. St. 528; *Richberger v. American Express Co.,* 73 Miss. 161, 18 South. 922, 55 Am. St. 522, 31 L. R. A. 390; *Sawyer v. Norfolk & S. R.,* 142 N. C. 1, 54 S. E. 793; *Hussey v. Norfolk & S. R. Co.,* 98 N. C. 34, 3 S. E. 923, 2 Am. St. 312; *International Text-Book Co. v. Heartt,* 136 Fed. 129; *Palmeri v. Manhattan R. Co.,* 133 N. Y. 261, 30 N. E. 1001, 16 L. R. A. 136; *Dick v. Northern Pac. R. Co.,* 86 Wash. 211, 150 Pac. 8, Ann. Cas. 1917A 638; *Cyclohomo Amusement Co. v. Hayward-Larkin Co.,* 93 Wash. 367, 160 Pac. 1051.

The question of excess of privilege depending upon the *bona fides,* is one of fact for the jury. *Bacon v. Michigan Cent. R. Co.,* 66 Mich. 166, 33 N. W. 181; *Ecuyer v. New York Life Ins. Co.,* 101 Wash. 247, 172 Pac. 359, L. R. A. 1918E 536.

The damages were not excessive and it was unnecessary to show pecuniary loss. 25 Cyc. 531; *Rose v. Imperial Engine Co.,* 110 App. Div. 437, 96 N. Y. Supp. 808; *Woodhouse v. Powles,* 43 Wash. 617, 86 Pac. 1063, 117 Am. St. 1079, 8 L. R. A. (N. S.) 783; *Viss v. Calligan,* 91 Wash. 673, 158 Pac. 1012, Ann. Cas. 1918A 819; *Davis v. Tacoma R. & Power Co.,* 35 Wash. 203, 77 Pac. 209, 66 L. R. A. 802; *Cyclohomo Amusement Co. v. Hayward-Larkin Co., supra; Coffman v. Spokane Chronicle Pub. Co.,* 65 Wash. 1, 117 Pac. 596, Ann. Cas. 1913B 636; *Warren v. Kearney,* 63 Wash. 369, 115 Pac. 739; *Boyd v. Boyd,* 116 Va. 326, 82 S. E. 110; *Blakeman v. Blakeman,* 31 Minn. 396, 18 N. W. 103; *Bloomfield v. Pinn,* 84 Neb. 472, 121 N. W. 716; *Williamson v. Eckhoff,* 185 Mo. App. 234, 170 S. W. 322; *Wolkowsky v. Garfunkel,* 65 Fla. 10, 160 South.

791, 44 L. R. A. (N. S.) 351; *Hulbert v. Arnold*, 83 N. J. L. 114, 83 Atl. 497; *Brown v. Publishers: George Knapp & Co.*, 213 Mo. 655, 112 S. W. 474; *De Severinus v. Press Pub. Co.*, 147 App. Div. 161, 132 N. Y. Supp. 80; *Bresslin v. Star Co.*, 85 Misc. Rep. 609, 148 N. Y. Supp. 295; *Adams v. Cameron*, 27 Cal. App. 625, 150 Pac. 1005; *Estelle v. Daily News Pub. Co.*, 101 Neb. 610, 164 N. W. 558; *Minter v. Bradstreet Co.*, 174 Mo. 444, 73 S. W. 668; *Ogden v. Gibbons*, 5 N. J. L. 518; *Payne v. Rouss*, 46 App. Div. 315, 61 N. Y. Supp. 705; *Press Pub. Co. v. Gillette*, 229 Fed. 108; *Bishop v. Journal Newspaper Co.*, 168 Mass. 327, 47 N. E. 119; *Scott v. Sun Printing & Pub. Ass'n*, 26 N. Y. Supp. 690; *Palmer v. New York News Pub. Co.*, 31 App. Div. 210, 52 N. Y. Supp. 539; *Schoepflin v. Coffey*, 25 App. Div. 438, 49 N. Y. Supp. 627; *Houston Chronicle Pub. Co. v. Quinn*, 184 S. W. (Tex. Civ. App.) 669.

Holcomb, C. J.—In *Ecuyer v. New York Life Ins. Co.*, 101 Wash. 247, 172 Pac. 359, L. R. A. 1918E 536, we reversed a judgment of nonsuit, dismissing an action for slander tried to the court and a jury, and remanded the case for retrial. Upon retrial in the court below, respondent recovered judgment against appellant in the sum of $6,000, whereupon appellant unsuccessfully moved for judgment notwithstanding the verdict and moved for a new trial, which was denied upon condition that respondent remit the sum of $3,000 from the verdict in his favor, which thereafter respondent, under protest, did, and judgment was entered in the court below in the sum of $3,000 and costs against appellant, from which it has appealed.

Appellant also moved, at the close of respondent's evidence, that the court direct a verdict for appellant upon the ground that the evidence was insufficient to

authorize a verdict for respondent, which motion was also denied.

Sixteen errors are alleged by appellant; four of them being based upon the court's refusal to direct a verdict for appellant; denying the motion for a new trial; denying the motion for judgment notwithstanding the verdict and entering judgment for respondent for $3,000 and costs; and that the verdict is excessive, alleging that it was rendered under the influence of prejudice and passion; the remaining assignments of error being based upon instructions given by the court to the jury and excepted to by the appellant.

The issues and the facts pleaded and proven are substantially the same as at the former trial, and reference is made to the former opinion, *supra,* for an understanding thereof. In addition to the evidence at the former trial, appellant introduced the testimony of witnesses Norton, the cashier, and Buxton, traveling auditor, of appellant, whose testimony was to the effect that neither of them accused respondent of wilfully taking the money of appellant, or of having any malice or intent to injure respondent, or of having any authority on the part of appellant to make such charges.

The law of the case was generally settled by the former decision. In brief, we there decided that:

"Words falsely spoken of a person which impute to him some criminal offense involving moral turpitude for which he, if the charge were true, might be indicted and punished, and defamatory words falsely spoken of a person which in themselves prejudice him in his profession, trade or vocation, are slanderous and actionable *per se.* . . . It is obvious, therefore, that all four of the utterances here charged as slanders were slanderous *per se,* unless they were either true or privileged. Appellant contends that neither of them was either true or privileged. Respondent insists that all were true, and all were privileged whether true or not."

It will be observed that the appellant there is the respondent here, and that respondent there is the appellant on this appeal. We also there said:

"The truth of the communication is a complete defense to the civil action for libel or slander. But defamatory words are presumed to be false until proven to be true. The onus of such proof lies on the defendant. . . . The words charged as slanderous in the first communication were proven to have been published by utterance to and in the presence of appellant's father. They were direct, unequivocal and repeated charges that appellant had stolen the money then missing and other unnamed sums. So far as the evidence shows, the whole truth was that the receipts showed that appellant had collected the money and his cash book showed that he had not accounted for it. Had the offending communication been confined to a statement of those facts, the evidence, which conclusively established their truth, would have made a complete defense. But it was not so confined. He was charged with stealing the money. That charge was not established by such a degree of proof that any court would be justified in saying that the minds of reasonable men might not differ as to its truth. The question was one for the jury. Appellant denied that he took the money, the key was in the lock of the cash drawer, the room was the common office room of many employees, any one of whom might have taken the money and the corresponding memorandum slips. The evidence was conclusive of appellant's carelessness but not of his dishonesty."

Upon the trial now before us for review, the situation was the same as presented in the previous trial regarding the words spoken of and concerning the respondent in this appeal; and the respondent was subjected to a close and critical cross-examination which did not in the slightest detract from his straightforward and convincing evidence.

. . On the former appeal we held that, if the occasion of the use of the words was privileged at all, it needs neither argument nor citation of authority to · show that the privilege was not absolute but qualified, holding the rule of qualification to be:

"Where the communication is prompted by a duty to the public or to a third person, or is made touching a matter in which the party making it has an interest to another having a corresponding interest, it is privileged if made in good faith and without malice. . . . Though malice is the gist of the criminal charge of libel . . . it is not ordinarily an essential element in the civil action for slander or libel . . . But this is not true in cases involving the qualified privilege. In such cases, actual malice must be proved, and the onus of proof is upon the plaintiff . . . Where it is not disputed that the words were uttered, the question whether the occasion was privileged is one for the court; whether *bona fides* existed in the statement made or whether it was malicious is usually a question of fact for the jury. . . . This the jury must determine from the language itself and the surrounding circumstances."

It is now contended by appellant on this appeal that there is no evidence of malice on the part of the officers of appellant company, and that, on the other hand, they positively testified that they had no malice, but were only looking to the welfare of the company and acted and spoke as they did in good faith. The jury, however, was competent to judge of their credibility, and, as we said on the former appeal, the jury had to determine from the language itself and all the surrounding circumstances whether the statements were made in good faith or were malicious. Having held before that the occasion was one of qualified privilege, the question of whether the privilege was exceeded is to be determined from the character of the charges made and of the circumstances surrounding them; and

we must now hold, upon the record before us, that this question was foreclosed by the verdict of the jury.

Appellant contends, however, that Norton and Buxton had no authority to make slanderous statements whereby the company would be bound. We are of the opinion that this question is also foreclosed by our decision on the former appeal; but whether so or not, it was alleged and shown that appellant is a corporation organized under the laws of the state of New York, doing business in this state and conducting a branch office in Seattle; that, at all the times mentioned in the complaint, Norton was the cashier of the Seattle office and in charge of all the moneyed operations of that office; and that Buxton was a branch office examiner of appellant whose duty it was to examine the accounts and financial operations of appellant's branch offices in the city of Seattle and also in the state of Washington, and also all branch houses throughout the United States and the Dominion of Canada; that on the day, April 11, 1916, when the defamatory statements were made, Buxton and Norton, acting within their duties and the scope of their authority, were duly examining the finances of the Seattle office, including the moneyed operations and accounts handled by the respondent as assistant cashier to Norton, and that appellant, through its authorized agents Norton and Buxton, both together and separately, made the slanderous statements charged by respondent. It is further alleged that thereafter other like statements were made to other people specifically named, and that thereafter, on April 15, 1916, other like slanderous statements were made to one H. H. Ward, and thereafter, on April 22, 1916, other like slanderous statements were made to other parties. In its amended answer, appellant admits that it is a corporation engaged in the business of life insurance; admits that respond-

ent was in its employ at the Seattle office as bonded clerk; admits that Buxton, acting within the duties of his employment by appellant, examined the finances of appellant's Seattle office, and that, as a result of such examination, appellant claimed that respondent was short in his account. Appellant further admits that Norton, named in the complaint, was an employee of the appellant in its Seattle office, and was known as the cashier thereof and was charged with the same duties as respondent, but was superior in authority to respondent. Appellant also admits that Buxton, named in the complaint, was in the employ of appellant and was engaged in auditing and checking up from time to time the accounts and records of the respondent and other employees of the Seattle office, and that Buxton demanded of the respondent that he turn over to the appellant the two sums of money of which his accounts were alleged to be short, as it was his duty then and there to do.

In *Grand Union Tea Co. v. Lord,* 231 Fed. 390, Ann. Cas. 1918 C 1118, the court, in speaking of the authority of the traveling auditor to bind the company for slander, says:

"It is argued, in the first place, that defendant, a corporation, is not liable for the alleged slander because the statement concerning Lord was not made by Van Allen in the scope of his employment or in the performance of his duties, and particularly because it was not authorized by the corporation. We deem it unnecessary to review the numerous cases involving the liability of a corporation for the tortious acts of its agent, because the law is well settled that a corporation is liable for the slanderous words of the agent if the agent at the time is transacting the business of the corporation, and the slanderous words are spoken in the course of such business and in connection therewith."

See, also, *Gallagher v. Singer Sewing Machine Co.*, 177 Ill. App. 198; *Pennsylvania Iron Works Co. v. Voght Machine Co.*, 29 Ky. Law 861, 96 S. W. 551; *Fogg v. Boston & L. R. Co.*, 148 Mass. 513, 20 N. E. 109, 12 Am. St. 583.

In view, therefore, of the admissions and allegations of the pleadings, including those of appellant, we cannot sustain this contention of appellant. Corporations are liable for libel and slander uttered by their officers and agents in the scope of their employment, the same as for other torts.

We have carefully examined the instructions given by the court to the jury in full, and while many objections are made to them or to portions of them, without setting them out at length, which would make this opinion much too long, we are of the opinion that they carefully follow the law of the case as laid down in the decision upon the former appeal of this case, and, in fact, in some respects were somewhat favorable to appellant. The jury was carefully instructed that the occasion was privileged and that respondent could not recover damages unless the privilege was exceeded and abused, thereby requiring respondent to show malice, and the jury was to consider all of the language spoken and the time, place and circumstances thereof and all of the evidence before it, and determine therefrom whether or not the defamatory statements made by appellant's agents were made in good faith or with malice. In view of this evidence, as we have said before, there is no doubt that the jury was justified in finding that the privilege was exceeded and that there was malice.

The instructions further charged the jury that, if it found that the privilege was exceeded and malice was shown and that the words were slanderous *per se,* in such case, respondent was entitled to recover and

the jury were to fix his damages within the amount demanded in the complaint, but that it could not allow any special damages or damages for loss of employment or failure to secure employment, as there was no evidence thereof. This, briefly, was the manner of the submission of the case to the jury under the instructions, and we think there is no just complaint to be made of them.

Last, that the verdict is excessive, and that the judgment as rendered by the court, after reducing the verdict, is excessive. This is largely based upon the assertion that the defamatory statements were only made to respondent's father, were made without malice, and that there is no proof of any humiliation, mental suffering and general damage. The evidence is, however, that respondent is an adult, twenty-five years of age, that the statements were made to the father of respondent, and were also repeated to other persons; and such repetition is a matter to be considered in fixing damages, for it is the rule that, although only general or compensatory damages, without any special damages arising from and upon injuries flowing from the slander, may be recovered, repetition and republication of the slander by the defendant may be considered by the jury as to the question of malice and in aggravation of damages: 25 Cyc. 535; *Stowell v. Beagle,* 79 Ill. 525; *Fowler v. Gilbert,* 38 Mich. 292; *Kean v. McLaughlin,* 2 Serg. & R. (Pa.) 469. It has also been held that, because a libel or slander involves an injury to a plaintiff's feelings, as well as to his reputation, his injury may be greater if the defamatory words are uttered with express malice than if there is only the malice which the law implies from intentionally doing, without justification, that which in its natural tendency is injurious. 25 Cyc. 534. In this

case, the words being actionable *per se,* without reference to the business or professional character of respondent, he was entitled to recover for the mental suffering occasioned by the publication of the defamation. Respondent testified as to his mental suffering and humiliation and was corroborated by members of his father's family, and the lower court exercised its discretion and reduced the damages allowed by the jury to a moderate sum. We are not now disposed to interfere with that award.

We find no error justifying reversal, and the judgment is affirmed.

PARKER and FULLERTON, JJ., concur.

## ON REHEARING.

[*En Banc.* December 22, 1919.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adhere to the view expressed in the opinion heretofore filed, to the effect that there is no prejudicial error in the case and that the judgment should be affirmed.