[No. 35024. *En Banc.* January 19, 1961.]

ALBERT E. FARRAR, *Respondent*, v. TRIBUNE PUBLISHING COMPANY, *Appellant*.[1]

*Carnahan, Gordon & Goodwin,* for appellant.

*Howard Carothers,* for respondent.

FOSTER, J.— The question for decision is whether we should overrule *Ott v. Press Pub. Co.,* 40 Wash. 308, 82 Pac. 403 (1905). It was there held that, in an action for damages on account of a newspaper publication which was libelous *per se,* the defendant may, under the express provisions of RCW 4.36.130, plead and prove all of the mitigating circumstances, and that the court cannot hold, in the face of this statute, that such pleading should be stricken or the evidence rejected on the theory that only punitive damages can be mitigated. The court adheres to that decision.

Appellant, publisher of the Tacoma News Tribune, appeals from a judgment awarding respondent Farrar $23,000 for written defamation.

During a contest between respondent and George W. Kupka for the state Senate, the Tacoma News Tribune published Kupka's following paid political advertisement:

"ATTENTION, VOTERS OF THE 27TH DISTRICT!

"FARRAR FINDS 'THAR'S GOLD IN THEM THAR BILLS'

[1] Reported in 358 P. (2d) 792.

"As a member of the legislature, Al Farrar sponsored Bill No. 21—'More favorable pensions for law enforcement personnel.'

*"How did this affect Farrar?* We quote from the Tacoma News Tribune, issue of Oct. 2, 1956:

" 'Under the new computation, Al Farrar, a former captain of detectives who is now a 35th district legislator, stands to collect $4,100. And his brother, W. E. Farrar, former public safety commissioner and chief of police, will receive $3,047.50.'

"But that isn't all. Farrar's bill also increases his pension from $125 per month to approximately $227.50. He did *not* vote for H. B. 198, however, which would have helped our senior citizens in their declining years!

"If *you,* the voter and taxpayer, want representation at Olympia

"VOTE FOR GEO. W. KUPKA

"FOR SENATOR 27TH DISTRICT

"DEMOCRAT

"Veteran of World War II

" (Paid Advertisement)"

Farrar sued both Kupka and the newspaper. Eventually Kupka was dropped and, consequently, the judgment is against the newspaper alone for $23,000, from which it appeals.

Three errors are assigned: (1) That the publication was not libelous *per se*; (2) two assignments which can be considered together, the striking from appellant's answer the mitigating circumstances, and the exclusion of evidence thereof; and (3) the denial of a new trial because of the claimed excessiveness of the verdict.

The writing as a whole must be considered and the ultimate test is the sense in which it would ordinarily and reasonably be understood by the readers.[2] *Owens v. Scott Pub. Co.,* 46 Wn. (2d) 666, 284 P. (2d) 296, certiorari denied 350 U. S. 968, 100 L. Ed. 840, 76 S. Ct. 437; *Carey v. Hearst Publications, Inc.,* 19 Wn. (2d) 655, 143 P. (2d) 857. The writing was actionable without proof of special damage because it imputed misconduct in office, want of official integrity, and want of fidelity to public trust. It tended both

---

[2]Prosser on Torts, 572, 579, chapter 19, § 92.

to deprive respondent of public confidence and to injure him in his profession.

In the complaint, respondent Farrar claimed damage for "humiliation, mental anguish," and "injury to his feelings."

The appellant, Tribune Publishing Company, pleaded in its first affirmative defense that the publication complained of was a paid political advertisement, that it had no part in its preparation, and that it published the same in the genuine and reasonable belief that it was true. All of this was stricken by written order. At the trial, appellant offered evidence in support of its claim of mitigating circumstances but the same ruling was made, and the offered evidence was excluded. Both rulings are assigned as error.

RCW 4.36.130, which was enacted by the first territorial legislature in 1854, provides as follows:

"In an action mentioned in RCW 4.36.120 [libel and slander], the defendant may, in his answer, allege both the truth of the matter charged as defamatory, and any mitigating circumstances to reduce the amount of damages; and whether he proves the justification or not, he may give in evidence the mitigating circumstances."[3]

The essence of the respondent's argument is that mitigating circumstances are material only in a claim for exemplary or punitive damages and that, because such damages have never been allowed in Washington, mitigating circumstances are not material.

But this same argument was rejected in *Ott v. Press Pub. Co., supra.*

This argument was more plausible in 1905, at the time of the *Ott* decision, than now because only thirteen years before[4] the court first announced that exemplary damages could not be recovered in this state. The additional argument was made in the *Ott* case that the legislature could not have had in mind actual or compensatory damages, which are not logically susceptible of mitigation, but only exemplary or punitive damages.

[3]California and Colorado have identical statutes: Cal. Code of Civil Procedure, 859, § 461; Colo. Rev. Stat. (1953), 514, § 52-1-26.

[4]*Spokane Truck & Dray Co. v. Hoefer*, 2 Wash. 45, 25 Pac. 1072 (1891).

The verdict in the *Ott* case was for the defendant newspaper. Upon appeal, the following errors were assigned:

" . . . in permitting respondent to introduce evidence showing, (1) the directions given by the editor to the reporter who wrote the article; (2) as to conversations between the editor and reporter; (3) as to who accompanied the reporter sent in search of information to which the libel relates; (4) as to how often reports were made to the editor; and (5) as to the motive of respondent in publishing the libel. . . ."

The court said:

"Appellants' theory is that the only damages which could be mitigated would be punitive, their argument being that actual damages, being compensatory only, could not be mitigated, and that evidence of mitigating circumstances should not have been admitted for the purpose of reducing other damages which would be punitive in their character and not recoverable. In answer to this argument it is only necessary to suggest that the doctrine in regard to punitive damages announced in *Spokane Truck & Dray Co. v. Hoefer, supra* [2 Wash. 45, 25 Pac. 1072 (1891)], did not, when so announced become for the first time a new law of this state, modifying or changing any existing statute. We simply declared and interpreted the law as it already existed prior to the enactment of said § 4939, *supra*. In the later case of *Levy v. Fleischner,* 12 Wash. 15, 40 Pac. 384, Dunbar, J., after having distinguished punitive from actual damages, in a further discussion of the different classes of actual damages, said:

" 'We do not mean by the term "actual damages," the actual damages expressed by the statute, of course, such actual damages as could be definitely determined as the actual loss which the debtor would incur by reason of the attachment, and which loss could be determined or computed; but an undetermined loss and damage which is no less actual by reason of its indeterminate character; such as damage to reputation, damage to pride and to feeling, and damages of that character, some of which, it is true, are more or less sentimental; . . .' "

The question herein is whether the absence of malice in written defamation can be a mitigating circumstance on the issue of damages. The trial court held that it was not.

Only compensatory damages can be recovered. Exemplary

damages are unknown to our law. *Arnold v. National Union of Marine Cooks & Stewards,* 44 Wn. (2d) 183, 265 P. (2d) 1051; *Ott v. Press Pub. Co., supra; Spokane Truck & Dray Co. v. Hoefer,* 2 Wash. 45, 25 Pac. 1072. Therefore, proof that a libelous publication was actuated by total malevolence cannot increase recovery one cent above the compensatory damages proved.

The issue then narrows to whether the existence or absence of malice can have an effect either to enhance or decrease the actual damages suffered by the party defamed.

Since injury to reputation, character, feelings and mental suffering are proper elements of general damage *(Viss v. Calligan,* 91 Wash. 673, 158 Pac. 1012; *Woodhouse v. Powles,* 43 Wash. 617, 86 Pac. 1063; *Ott v. Press Pub. Co., supra),* respondent pleaded and offered proof as to his mental suffering which ensued from the defamation. It was to mitigate proof of such damage that appellant offered evidence of its lack of malice.

Respondent argues that malice is not relevant to the intangible mental and emotional elements of compensatory damages. Respondent claims that appellant's malice or lack of malice could not be in issue and evidence thereof was properly excluded. In such argument, respondent is mistaken.

The distinction between the exemplary damage rule of other states[5] and our compensatory damages for wounded

---

[5] " . . . the great majority of states retain the doctrine of exemplary damages in full force. Four states have by judicial decision completely rejected exemplary damages, but no state has done so by statute. . . . " 70 Harv. L. Rev. 517, 518.

"(4) The doctrine is sometimes said, however, not to be favored in the law, *e.g.,* Aladdin Mfg. Co. v. Mantle Lamp Co., 116 F. 2d 708, 717 (7th Cir. 1941); Cays v. McDaniel, 204 Ore. 449, 456-57, 283 P. 2d 658, 661 (1955), and some courts have accepted it reluctantly, *e.g.,* Brown v. Swineford, 44 Wis. 282 (1878).

"(5) Vincent v. Morgan's La. & Tex. R. R., 140 La. 1027, 74 So. 541 (1917); Burt v. Advertiser Newspaper Co., 154 Mass. 238, 245, 28 N.E. 1, 5 (1891); Boyer v. Barr, 8 Neb. 68 (1878); Spokane Truck and Dray Co. v. Hoefer, 2 Wash. 45, 25 Pac. 1072 (1891). . . . " 70 Harv. L. Rev. 517, 518, notes 4, 5.

feelings, shame, humiliation, mental anguish and distress is vague[6] indeed and defies definition.[7] Certain it is, how-

[6]"After all, the distinction between compensatory damages for wounded feeling, sense of insult, etc., and punitory damages, is sometimes very vague, as may be seen by comparison of *Wilson v. Young*, 31 Wis., 574, and *Craker v. Railway Co.*, 36 id., 657. And the vagueness of this distinction, in practice as well as in theory, is illustrated by the three reports of *Bass v. Railway Co.*, 36 Wis., 450; 39 id., 636; 42 id., 654. The case was three times tried, in different counties; twice upon instructions allowing exemplary damages, and once upon instructions disallowing them. And yet the verdict on each trial was for the same sum. Apparently, what was allowed on two trials for exemplary damages, was allowed on the third trial for compensatory damages for wounded feelings, etc." *Brown v. Swineford*, 44 Wis., 282, 289, 28 Am. Rep. 582.

[7]"Damages of the second class, which I will designate as indeterminate damages, such as from their nature can not be ascertained either exactly, or with any sort of approximation to exactness; such, for instance, as damages, for physical suffering consequent upon the injury inflicted by the defendant, including any temporary, protracted or permanent deformity, disability or disfiguring, as by scars or the like, or damages caused by mental anguish, loss of honor or sense of shame of the plaintiff, caused by the defendant's tort, the sense of wrong or degradation felt by the plaintiff and the like, or damages resulting from the defendant's act in injuring the business reputation, social standing and the like of the plaintiff.

"Damages of this sort have, I think, been generally but very inappropriately, called vindictive damages, exemplary damages or punitive damages. This designation does not sufficiently distinguish damages of this class from damages of the first class, which I have called determinate pecuniary damages. For, in a general sense, determinate pecuniary damages, might be called exemplary; that is, determinate pecuniary damages—as, for instance, the value of property destroyed by the defendant—inflicted on the defendant would, of course, serve as a warning to him and others to avoid the inflicting of such injuries on others; or such determinate pecuniary damages might be said to be punitive, as the inflicting of such damages must operate incidentally as a punishment to the defendant, though its object was only to compensate the plaintiff for his loss; or such damages might, in a loose sense, be called vindictive, as it might gratify a vindictive feeling of the plaintiff. But this seems to me a most inappropriate name to bestow on any sort of damages; for, surely, none of them can be regarded as found against the defendant to gratify a vindictive feeling of the plaintiff, or any one else, towards him.

"But the greatest objection to calling this second class of damages, which I designate as indeterminate damages, either vindictive exemplary or punitive damages, by some one of which they have been very generally called, is that any one of these designations must almost certainly lead to confounding such damages, which are obviously compensatory in their character, with the third class of damages, which

ever, that in those states allowing recovery for exemplary damages, the indeterminate and indefinite items of damage, which this state includes as mental anguish and distress, are included within the term "exemplary damage." But the label, name or classification to be attached is not of importance, because both embrace the same intangible elements for which courts are unable to give juries any exact guide in fixing the dollar value.[8]

The jury may award nothing, or it may award the $75,-000 specified in the prayer of the complaint. The same situation exists with respect to exemplary damages. It may be nothing, or it may be a great deal. In either case, the jury is guided solely by its own discretion. In exercising the discretion in either instance, it is entitled to know all of the surrounding circumstances to assist it in placing a dollar value on intangible items of damage.

Such is the reason why this court held in the *Ott* case that the statute in question granted the defendant the right to plead and prove all of the circumstances in mitigation of damages.

This phase of the court's opinion in the *Ott* case is as follows:

"Our interpretation of the above language is that, as distinguished from punitive damages, there may be two classes of actual damages. Appellants separately claimed actual damages for mental pain and suffering, and for

---

many insist exists, but which others deny, and whose appropriate designation, if it has any existence, is properly penal damages, but which is commonly called, by those who claim it has an existence, punitive damages. . . . " *Pegram v. Stortz*, 31 W. Va. 220, 237, 6 S.E. 485.

[8]"Under the rule, as stated by Mr. Greenleaf, this increase of damages resulting from the character of the defendant's conduct, showing fraud, malice or oppression, is given to the plaintiff as compensation for the invasions of his 'peace of mind, his quiet and sense of security in the enjoyment of his rights;' while under the rule, as stated by Mr. Sedgwick, this increase is given as 'punitory, vindictive or exemplary damages.' In either case, and under either rule, the amount given by the jury is 'imaginary,' 'presumptive' or 'speculative,' with them; that is, the jury have not, and in the nature of things cannot have, in either case, any pecuniary standard by which to measure the amount of compensation or damages, to which the plaintiff is entitled." *Hendrickson v. Kingsbury*, 21 Iowa 379, 388.

injury to business. While damages for mental pain and suffering may be, and sometimes are, recognized as actual, as distinguished from punitive damages, nevertheless they are, to a certain extent, indefinite, and their value must in all cases be fixed by the jury, in view of all the facts and circumstances surrounding any particular case. In this action appellants were permitted to introduce evidence showing damages of this character, and under said section 4939, *supra*, evidence of mitigating circumstances was certainly admissible as affecting such actual damages. In any event, the statute expressly provides that such evidence may be admitted, and it would be improper for us, in the face of such statute, to hold that it should be rejected."

By decisional law, Colorado rejected the doctrine of exemplary damages.[9] Nevertheless, *Republican Pub. Co. v. Mosman,* 15 Colo. 399, 410, 24 Pac. 1051, held that the identical statute with which we are here concerned entitled a defendant in a libel action to plead and prove all the mitigating circumstances. A subsequent Colorado statute sanctioned exemplary damages. 3 Colo. Rev. Stat. 221, § 41-2-2.

This court's responsibility in the present situation is merely to determine whether lack of malice on the part of the publisher *may* result in less compensatory damages to the plaintiff. If so, then by statute, RCW 4.36.130, pleading and proof of lack of malice is proper. What weight, if any, is to be given to such evidence is for the jury to decide. Perhaps the jury will feel that the amount of compensatory damages suffered was unaffected by the publisher's lack of malice; or perhaps the contrary will be true, and the jury will decide that the publisher's innocent intention resulted in less damage than if the publication had been actuated by malice. We should not and cannot say what a jury would decide, but we must determine whether malice or the lack thereof could have any effect on the damage suffered by the defamed party, and whether it should go to the jury.

The *Ott* case held admissible such evidence of lack of malice as was offered in the instant case. The passage of

---

[9] *Murphy v. Hobbs,* 7 Colo. 541, 5 Pac. 119 (1884).

time has not invalidated the reasons for that holding, and we decline to recede therefrom.

Mental suffering and injury to feelings are proper elements of compensatory damage. The malice or lack thereof of the publisher of a libelous article *may* affect the amount and intensity of mental suffering and injury to feelings, and is thus relevant to the computation of the actual damages suffered thereby.

This is not new, for it is supported by much authority. The view was clearly stated in *Ecuyer v. New York Life Ins. Co.*, 107 Wash. 411, 422, 181 Pac. 871, as follows:

" . . . it is the rule that, although only general or compensatory damages, without any special damages arising from and upon injuries flowing from the slander, may be recovered, repetition and republication of the slander by the defendant may be considered by the jury as to the question of malice and in aggravation of damages . . . It has also been held that because a libel or slander involves an injury to a plaintiff's feelings, as well as to his reputation, his injury may be greater if the defamatory words are uttered with express malice. . . ."

In Massachusetts, exemplary damages are not permitted in libel cases, but only actual damages may be recovered. *Burt v. Advertiser Newspaper Co.*, 154 Mass. 238, 28 N. E. 1, 13 L. R. A. 97; *Ellis v. Brockton Pub. Co.*, 198 Mass. 538, 84 N. E. 1018.

Yet, *Faxon v. Jones*, 176 Mass. 206, 207, 57 N. E. 359, held:

"It has been expressly adjudged in this Commonwealth that because a libel or a slander involves an injury to the feelings of the plaintiff, as well as to his reputation, his injury may be greater if the defamatory words are uttered with express malice . . . This suffering may be enhanced by knowledge of the malicious purpose of the slanderer, and this aggravation of the mental suffering of the plaintiff does not depend upon the effect produced . . . upon the persons to whom the slander or libel was published. . . . Accordingly, evidence of previous or subsequent declarations or conduct of the defendant, as well as of his conduct and language at the time of the slander, is received for the purpose of proving express malice in aggravation of damages. . . ."

Judge Wyzanski, in *Curley v. Curtis Pub. Co.*, 48 F. Supp. 29, 34, instructed:

"In a libel suit, the appropriate measure of damages is the loss of reputation suffered by the plaintiff, the physical pain which he has suffered, and the mental anguish which he has suffered.

"You will note that I have said the suffering must be by him, not by others.

"You cannot, under any circumstances, include punitive damages. You may, however, properly take into account malice, if you find that there is malice, and you may enhance damages on account of malice."

It is clear that if evidence of malice is admissible to enhance the computation of actual damages, it is also proper to disprove malice in mitigation of damages, that is, to show that the damages are less than are claimed.

McCormick, Damages, 433, 435, chapter 17, § 119, states:

". . . Other cases . . . espouse the more realistic attitude that the defendant's apparent ill will may heighten the humiliation or suffering sustained by the plaintiff, and consequently that the showing of malice or of mitigating good faith should come in as bearing not only on exemplary, but also on compensatory damages. This prevents the injustice which may result from the jury's receiving only a piecemeal story, if the plaintiff by waiving exemplary damages may prevent the defendant from explaining the circumstances which reveal a seemingly deliberate calumny as being actually a pardonable and morally innocent mistake."

Other cases are collected in the margin.[10]

---

[10]*Mount v. Welsh,* 118 Ore. 568, 247 Pac. 815; *Marble v. Chapin,* 132 Mass. 225; *Markham v. Russell,* 94 Mass. 573 (12 Allen 573), 90 Am. Dec. 169; *Burt v. Advertiser Newspaper Co.,* 154 Mass. 238, 28 N.E. 1, 13 L.R.A. 97; *Cox v. Cashio* (La.), 96 So. (2d) 872; *Kennedy v. Item Co.,* 213 La. 347, 34 So. (2d) 886; *Comer v. Advertiser Co.,* 172 Ala. 613, 55 So. 195; *Madison v. Bolton,* 234 La. 997, 102 So. (2d) 433; *Conroy v. Fall River Herald News Pub. Co.,* 306 Mass. 488, 28 N.E. (2d) 729, 132 A.L.R. 927; *Scripps v. Reilly,* 38 Mich. 10; *Schattler v. Daily Herald Co.,* 162 Mich. 115, 127 N.W. 42; *Marksberry v. Weir,* 173 Ky. 316, 190 S.W. 1108; *James v. Powell,* 154 Va. 96, 152 S.E. 539; *McHugh v. Ambrose* (Iowa), 113 N.W. 1080; *Verges v. News Syndicate Co.,* 11 Fed. Rules Dec. 587; *Fleckenstein v. Friedman,* 266 N.Y. 19, 193 N.E. 537; *Walrus Mfg. Co. v. Excel Metal Cabinet Co.,* 161 F. Supp. 840; *McMullen v. Corkum,* 143 Me. 47, 54 A. (2d) 753; *Annenberg v. Doubleday, Doran*

It must be remembered that we hold merely that the presence or absence of malice by the publisher of a defamatory statement is revelant to, that is, may affect, the amount of damages accruing by reason of mental suffering and injury to feelings. Whether, on the facts of a particular case, malice or lack thereof had much, little, or no effect on the mental suffering of the defamed person is for the jury to decide and to compute the damages accordingly. Once relevance to actual damages is determined, the statute commands the admission of such evidence.

Respondent pleaded the element of mental suffering and injury to feelings, and introduced evidence in support thereof. Once that element of damage was in issue, it became proper to admit evidence, such as lack of malice, relevant to the computation of that element of damages.

Furthermore, a publication libelous *per se* was pleaded and proved, in consequence of which the law presumes malice. *Chambers v. Leiser*, 43 Wash. 285, 86 Pac. 627, 10 Ann. Cas. 270; *Stewart v. Major*, 17 Wash. 238, 49 Pac. 503. Accord, *Reese v. Fife* (Mo.), 279 S. W. 415; *James v. Powell*, 154 Va. 96, 152 S. E. 539; *Cook v. Patterson Drug Co.*, 185 Va. 516, 39 S. E. (2d) 304; *Shumate v. Johnson Pub. Co.*, 139 Cal. App. (2d) 121, 293 P. (2d) 531.

In the last cited case, the court said:

" ' . . . malice [not only in law, but] in fact is implied or presumed . . . In other words, the existence of malice in fact is sufficiently shown by the publication to make the question an issue before the jury. . . . ' . . . Whether malice may or may not be inferred from the intrinsic evidence which the publication affords is for the trier of fact to say. . . ."

Since malice or lack thereof is relevant to the assessment of damages for mental suffering and injury to feelings upon which there was pleading and proof, and since the existence of malice was implied from the publication which was libel-

& *Co.*, 84 N.Y.S. (2d) 294; *Mencher v. Chesley*, 193 Misc. 829, 85 N.Y.S. (2d) 431; *New York Soc. for the Suppression of Vice v. MacFadden Publications, Inc.*, 133 Misc. 686, 233 N.Y.S. 273; Annotation, 90 A.L.R. 1175, 1196; *Craney v. Donovan*, 92 Conn. 236, 102 Atl. 640, L.R.A. 1918C, 96 (Note); 53 C.J.S. 368, § 249.

ous *per se* and was thus before the jury, the jury should have before it all relevant circumstances.

Consequently, appellant was entitled to plead and prove the absence of malice. The circumstances surrounding the publication are clearly relevant to this question. *Ott v. Press Pub. Co., supra; Holden v. American News Co.,* 52 F. Supp. 24, appeal dismissed 144 F. (2d) 249; *New York Soc. for the Suppression of Vice v. MacFadden Publications, Inc.,* 133 Misc. 686, 233 N. Y. S. 273.

We find no reason to recede from the conclusion announced in the *Ott* case construing the governing statute.

The judgment is reversed and a new trial granted.

WEAVER and OTT, JJ., concur.

FINLEY, C. J., concurs in the result.

ROSELLINI, J., did not participate.

HILL, J. (concurring in the result)—I concur in the result of the majority opinion, because of our statute (RCW 4.36-.130) which I believe to have been correctly interpreted and applied in *Ott v. Press Pub. Co.* (1905), 40 Wash. 308, 82 Pac. 403.

DONWORTH, J., concurs with HILL, J.

MALLERY, J. (dissenting)—One Kupka libeled the respondent for the purpose of injuring him politically. Knowing his own inability to spread the libel effectively, he hired the appellant, an advertising medium, to give the libel a dissemination coextensive with its circulation. He, thus, succeeded in inflicting a great injury upon the respondent.

Prior to this case, the law afforded the victim of a libel a remedy to the full extent of the injury against such an advertising medium. No distinction was made between the amount of the advertiser's liability and that of the advertising medium. The proof offered as the amount of the damage was, of course, subject to rebuttal as in all cases. Thus, both the advertiser and the advertising medium could controvert the victim's proof as to the amount of the damage suffered by showing mitigating circumstances which

indicated a lesser amount of damage. The advertising medium has never before been permitted to establish a lesser liability than that of the advertiser by showing that it did not share the advertiser's malice. Mitigating circumstances went to the amount of the damage, not to the question of which party was defending the action. Indeed, it has never been questioned that an advertising medium is actuated by the profit motive rather than malice.

And malice is not, in fact, an element of the liability of an advertising medium. Its liability is predicated upon its duty to exercise care in the conduct of its business so as not to indiscriminately injure the victims of an advertiser's obvious malice. Had the rule been otherwise, only the advertiser, who had the malice, would have been liable, and the advertising medium, which had none, would have been immune. The majority opinion changes this universal and time-honored rule by abandoning the common-law duty of care as the basis for the advertising medium's liability and substitutes some vague and undefined duty not to share the advertiser's malice.

In doing this, the majority have not acted under the compulsion of *stare decisis*. *Ott v. Press Pub. Co.,* 40 Wash. 308, 82 Pac. 403, is not in point. It in no way concerned a malicious advertiser and a nonmalicious advertising medium. In that case, a crusading editor promulgated the alleged libel as a matter of editorial policy when he sought to show the evil practice of employment agencies. If there was a libel it was *his* own, not another's. He was allowed to introduce evidence of his instructions to his reporters regarding their scrupulous ascertainment of the true facts as mitigating circumstances. This was relevant upon the issue of puni-tive damages, which was in the case.

We no longer allow punitive damages, and the rule, therefore, should be that the victim of a libel cannot recover more than his actual damage by proving malice. The appellant newspaper did not seek to show the absence of malice on the part of the advertiser. It sought to emphasize its own obvious lack of malice to escape liability for the full amount of the damage for which the advertiser would

have been liable. In permitting it to do so, the majority have applied a rule which might have relevancy as to punitive damages, but has none to a liability predicated upon a breach of a duty of care. This is like permitting a motorist to mitigate damages for personal injuries upon the ground that he had no malice and did not intentionally injure the victim.

I dissent.

HUNTER, J. (dissenting)—The majority has announced the rule that evidence of lack of malice may be introduced to mitigate the amount of damages accruing by reason of mental suffering and injury to feelings. In the abstract this is a correct statement of the law. However, it is applicable only where the mental suffering and injury to feelings results from the maliciousness of the publisher of the libelous statements.

In the instant case, there was no allegation that the publication was malicious. Moreover, the record discloses no evidence that the respondent suffered any injury to his feelings by reason of the publication being malicious. Nor is there anything in the record from which it might be inferred that the mental suffering and injury to feelings resulted from the maliciousness of the publisher.

There being no claim for damages for injured feelings, by reason of the malice of the publisher, there are no damages that can be mitigated by showing lack of malice on the part of the appellant. The introduction of such evidence under these circumstances would be wholly immaterial and have only the effect of confusing the jury. Moreover, RCW 4.36.130, permitting introduction of evidence to mitigate damages, cannot apply if there are no damages to mitigate. The trial court, therefore, correctly disallowed the introduction of evidence that the publication was not malicious.

The judgment on the jury verdict should be affirmed.

---

June 20, 1961. Petition for rehearing denied.