OTTEN, Appellant, v. SCHUTT and another, Respondents.*

*January 10—February 6, 1962.*

* Motion for rehearing denied, with $25 costs, on April 3, 1962.

For the appellant there was a brief by *Marth & Marth* of West Bend, and oral argument by *William J. Marth*.

For the respondents there was a brief by *O'Meara & O'Meara* of West Bend, and oral argument by *Stephen M. O'Meara*.

DIETERICH, J.   The action is for recovery of damages, both compensatory and punitive, occasioned by the slanderous statements of Lester Schutt.

The issues are whether under the evidence and facts in the instant action the statements made by Lester Schutt to the chief of police constitute a conditionally privileged communication and whether such statements were maliciously made.

A privileged communication or statement, in the law of libel and slander, is one which, except for the occasion on which or the circumstances under which it is made, would be defamatory and actionable. 33 Am. Jur., Libel and Slander, p. 123, sec. 124.

The general rule is that a defamatory communication if made in good faith, upon a subject matter concerning which the person communicating has a duty or interest, is privileged, if made to one having a corresponding duty or interest. Anno. 63 A. L. R. 1124.

In Restatement, 3 Torts, p. 260, sec. 598, it is stated that an occasion is conditionally privileged when the circumstances induce a correct or reasonable belief that, (a) facts exist which affect a sufficiently important public interest, and (b) the public interest requires the communication of the defamatory matter to a public officer or private citizen and that such person is authorized or privileged to act if the defamatory matter is true. Comment *e* (p. 263), makes this observation of the rule: "The privilege stated in this subsection affords protection to a private citizen who publishes defamatory matter to a third person even though he is not a law-enforcement officer, under circumstances which, if true, would give to the recipient a privilege to act for the purpose of preventing a crime or of apprehending a criminal or fugitive from justice."

The record reveals the following facts: Defendant Lester Schutt at the time this action was commenced, was manager of the J. C. Penney Company in West Bend, Wisconsin; that he had been a manager for over thirty years, and manager of the J. C. Penney Company in West Bend for twenty-seven years. During this period of time Schutt, in his capacity as store manager, had caused no one to be arrested or reported to the police. He testified that on the afternoon of April 5, 1958, he was called to the office

by one of the salespeople.  At the office he found Mr. Ballou, owner and operator of the Badger Paint Store, one of the Otten boys, and an office girl.  Mr. Ballou told him that the Otten boy had some merchandise which belonged to the Penney Company.  Schutt asked the Otten boy if he would like to pay for the merchandise and the boy replied that he would.  Schutt and the boy then went to the cashier's counter and the merchandise (an infant's silver set) was paid for by the Otten boy.

George Weinert, chief of police of the city of West Bend, testified that a call was received at the police station at 9:45 a. m. on Monday, April 7, 1958.  The call was taken by another officer and the message conveyed to Weinert that Schutt requested that he, Weinert, would stop in to see Schutt at the Penney Company.  Weinert testified that Schutt told him of the incident in the store involving an Otten who had taken a silver set and that Schutt had handed him a small white slip of paper with the name "Sylvester Otten" written on it.  Schutt told the police chief that Otten was employed by Heinemann Creameries or dairy in Kewaskum as a cashier or clerk who checked in the routemen as they came in from their various routes.  Schutt told him that Otten worked for one Mr. Geiger at Heinemann's and requested Weinert to contact Geiger for the reason that Otten handled large amounts of money.

Schutt further testfied that it was not his intention to have Otten apprehended and arrested, and he did not sign a complaint.

Weinert testified that he mentioned the incident to Sylvester Otten that same evening and Otten denied knowing anything about it.

Schutt in his testimony denied that he used the name "Sylvester Otten" at any time; that in fact he did not know the party's name, though he admitted that he knew the boy

was an Otten. At the time the Otten boy was in his office Schutt did not ask the boy his name, his address, or his place of employment; nor did he make any other investigation to determine who the suspect was. Schutt did not deny that he gave Weinert the slip of paper with the name "Sylvester Otten" on it, but says that he does not recall doing so and is sure that he did not write the name on the piece of paper. Schutt admitted that he told the chief of police that it might be well to contact Mr. Geiger as the suspect may have been the party who works at Heinemann's. The testimony of Schutt is that the information he gave Weinert was from rumors that he had heard in the store.

On April 21, 1958, a meeting was held at the police station in West Bend, which was attended by the chief of police, Lester Schutt, Mr. Ballou, Mr. Geiger, and Sylvester Otten, at which time it was definitely established by Lester Schutt and Mr. Ballou that Sylvester Otten was not the party involved in the incident of April 5, 1958.

On May 24, 1958, Sylvester Otten was discharged as not being qualified to do his job. He had been temporarily suspended on April 19th, until his name was cleared and after such suspension his job had been changed. All these events were due entirely to reasons other than the fact that he had been a suspect in the incident of April 5th, according to the testimony of Geiger.

The case was tried before a jury and a special verdict was returned. The pertinent portions of the verdict are as follows:

"Question one: Did the defendant Lester Schutt on or about April 7, 1958, speak to George Weinert, chief of police, of and concerning the plaintiff, substantially the words, 'Sylvester Otten is a shoplifter,' or other similar language charging Sylvester Otten with the crime of larceny? Answer: Yes.

"Question two: If you answer question one 'Yes,' then answer this question: Was the defendant Lester Schutt in

speaking the words referred to in question one actuated by express malice? Answer: Yes.

"Question three: If you answer question one 'Yes,' and answer question two 'No,' then answer this question: Did the defendant Lester Schutt at the time referred to in question one speak said words in good faith and with reasonable grounds to believe they were true? Answer ———."

The jury awarded plaintiff actual damages in the amount of $1,000 and punitory damages in the amount of $500.

On motions after verdict the trial court found that the communication from Schutt to Weinert fell within the category of a conditionally privileged occasion; that such occasion was not abused, and that there was no evidence in the case which would establish malice on the part of defendant Schutt. The court changed the answer to question two of the special verdict from "Yes" to "No," and directed that question three be answered "Yes" by the court, and dismissed the complaint.

The law relating to defamatory communications is based on public policy. The law will impute malice where a defamatory publication is made without sufficient cause or excuse, or where necessary to protect the interests of society and the security of character and reputation; but where the welfare of society is better promoted by a freedom of expression, malice will not be imputed. Anno. 63 A. L. R. 1113. See also *Flynn v. Western Union Telegraph Co.* (1929), 199 Wis. 124, 225 N. W. 742.

It is the duty of citizens to give to police or other officers such information as they may have respecting crimes which have been committed and that public policy requires that communications of this kind, at least if made in good faith, be protected as privileged. 33 Am. Jur., Libel and Slander (1961 Cum. Supp.), p. 23, sec. 137. A communication to a law-enforcement officer is generally held to be qualifiedly privileged if it is made in good faith and for the purpose of

helping to bring a criminal to justice. 33 Am. Jur., Libel and Slander, p. 136, sec. 137. See also *Hathaway v. Bruggink* (1919), 168 Wis. 390, 170 N. W. 244, and *Joseph v. Baars* (1910), 142 Wis. 390, 125 N. W. 913. But the mere fact that the person to whom a statement respecting the commission of crime was made happened to be an officer does not serve to protect the utterer, on the ground of privilege, from liability for libel and slander, where the statement was not made for purposes of apprehension or punishment of one who had committed a crime. Anno. 140 A. L. R. 1470. *Liske v. Stevenson* (1894), 58 Mo. App. 220; *Stewart v. Major* (1897), 17 Wash. 238, 49 Pac. 503; *Hancock v. Blackwell* (1897), 139 Mo. 440, 41 S. W. 205; and *Bigner v. Hodges* (1903), 82 Miss. 215, 33 So. 980.

The burden is on defendant to prove privilege as a defense to an action for defamation. 53 C. J. S., Libel and Slander, p. 332, sec. 220. "When the defendant has established a *prima facie* case of privilege, it ordinarily devolves upon the plaintiff to rebut this showing by proof of actual malice, want of good faith, or due care, etc., where such matters are material." 33 Am. Jur., Libel and Slander, p. 245, sec. 264. See also Restatement, 3 Torts, p. 299, sec. 613.

In *Hathaway v. Bruggink, supra* (p. 395), this court said that "The case here is controlled by the case of *Joseph v. Baars. . . .* There a communication to a village marshal by the defendant, for the purpose of having criminal proceedings instituted against the plaintiff therein, was held to be a privileged communication if written in good faith, . . ." The testimony establishes that Schutt did not contact the chief of police in order to institute criminal proceedings or for any other valid and proper police purpose. Therefore, Schutt's conversation was not protected as a conditional privilege. The occasion was privileged, but the conversation was not. 53 C. J. S., Libel and Slander, p. 345, sec. 228.

The record reveals that there is sufficient credible evidence from which the jury could infer that the only reason Schutt conferred with the chief of police was to embarrass the plaintiff at his place of employment, and that such conversation was motivated by ill will. Under such circumstances ill will constitutes or is the equivalent of malice.

It therefore necessarily follows that the judgment of the trial court be reversed and the answers of the jury to the questions in the special verdict reinstated.

*By the Court.*—Judgment reversed, with instructions to reinstate the answers of the jury in the special verdict and enter judgment thereon.

